The Honorable Kymberly K. Evanson

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| ABRAHAM FLAXMAN and AMY HAGOPIAN, individually and for a proposed class, <br><br> Plaintiffs, <br><br> v. <br><br> BOB FERGUSON, in his official capacity as the Attorney General of the State of Washington, and KATE REYNOLDS, in her official capacity as Executive Director of the Executive Ethics Board of the State of Washington, <br><br> Defendants. | NO. 2:23-cv-01581-KKE <br><br> DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS <br><br> NOTE ON MOTION CALENDAR: JANUARY 5, 2024 <br><br> Without Oral Argument |

## I. INTRODUCTION

Despite Plaintiffs' now-repeated attempts to have this Court enjoin the EEB from enforcing the Ethics in Public Service Act against them, the bottom line is that Plaintiffs' public employment comes with important ethical and statutory obligations, and the State has a compelling interest in ensuring public servants comply with those obligations. If Plaintiffs believe their conduct fell within the bounds of those statutory and ethical obligations, or that the EEB exceeded its authority in investigating them, the appropriate forum for raising those issues is within the context of Plaintiffs' currently pending cases before the EEB—not here. And, as

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  Plaintiffs' response brief makes clear, their amended complaint fails for precisely the same
2  reasons their initial complaint failed: (1) their claims are fundamentally unripe, as the EEB has
3  not reached any final decision in either of their pending cases; (2) the principles set forth in
4  *Younger v. Harris* require this Court to abstain, as the Plaintiffs' requested relief would
5  effectively enjoin the EEB from pursuing its civil enforcement actions; and (3) Plaintiffs fail to
6  state any plausible claim for relief, as they cannot allege any relevant or enforceable right related
7  to their state-issued email addresses. This Court should dismiss the Plaintiffs' Amended
8  Complaint with prejudice and award Defendants their fees and costs for responding to Plaintiffs'
9  serial, meritless complaints.

## II.    ARGUMENT

### A.    Plaintiffs' Claims Are Neither Constitutionally nor Prudentially Ripe

Cases like Plaintiffs', in which parties file suit to halt ongoing investigations, are textbook examples of unripe claims. *See* Dkt. No. 19 at 2, 8, 10–11 (collecting cases). Plaintiffs offer nothing whatsoever to distinguish this case from the legion of cases in which courts have dismissed nearly identical cases on ripeness grounds. And that's because there is nothing to distinguish this case.

On constitutional ripeness, this case is controlled by the Ninth Circuit's recent *Twitter* decision. *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022). *Twitter* stands for the proposition that a party alleging a First Amendment injury must offer more than "naked assertions" of harm to demonstrate standing. *Twitter, Inc.*, 56 F.4th at 1174–75. As detailed in Defendants' Motion, Plaintiffs' claim fails because they cannot show any non-speculative injury. Dkt. No. 19 at 7–10.

Neither of their two arguments help them. First, they contend that they have shown an injury because the EEB has informed them that their (alleged) violations of the Ethics in Public Service Act could potentially come with a fine that "may be more than $500." Dkt. No. 24 at 23. But they don't allege that any Plaintiff has ever actually been subjected to a fine. Nor do they

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO.  2:23-cv-01581-KKE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

allege that the possibility of a fine for violating the ESPA has chilled their speech in any way. *See Twitter, Inc.*, 56 F.4th at 1175 (finding no injury where there was no allegation an investigation "has actually chilled employees' speech"). In short, then, all they allege is that they might be fined if they are found to have violated the Ethics in Public Service Act. But this "general possibility" of a consequence is insufficient to establish an injury-in-fact. *Id.*; *accord Stoianoff v. State of Mont.*, 695 F.2d 1214, 1223 (9th Cir. 1983) ("The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III.").

Second, Plaintiffs argue they have suffered a First Amendment injury in the form of "an intrusive search of their emails." Dkt. No. 24 at 23. But the core premise of their argument is flatly wrong: they do not have a First Amendment privacy interest in their emails. Just like the undersigned counsel, their emails are public records (with limited exemptions). Any member of the public can submit a Public Records Act request for Plaintiffs' emails and get them. Plaintiffs therefore do not have *any* privacy interest in their emails writ large. (And to the extent they might have a privacy interest in *some* of their emails, they don't explain which PRA exemptions might cover any of their hypothetical emails, or allege that any such emails were disclosed in a search by the EEB.)

Plaintiffs seemingly dispute that the PRA applies to their emails because "[a] request for all or substantially all records prepared, owned, use, or retained by an agency is not a valid request for identifiable records under this chapter, provided that a request for all records regarding a particular topic or containing a particular keyword or name shall not be considered a request for all of an agency's records." Dkt. No. 24 at 18 (quoting RCW 42.56.070(1)). This is doubly wrong. First, whether every single one of Plaintiffs' emails could be captured via a single PRA request does not change the fact that they are public records. And second, the statute Plaintiffs cite *explicitly says* that "all records regarding a particular topic or containing a particular keyword or name shall not be considered a request for all of an agency's records."

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Thus, a request for "all emails sent to or from" Plaintiffs would absolutely qualify as a request for "identifiable records" under the PRA. *See Beal v. City of Seattle*, 150 Wash. App. 865, 872 (2009) ("An identifiable public record is one for which the requestor has given a reasonable description enabling the government employee to locate the requested record.").

All to say: neither of Plaintiffs' allegations of an injury-in-fact satisfy the "irreducible constitutional minimum" of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or hypothetical[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

And even if Plaintiffs could show constitutional ripeness, their claims would still be prudentially unripe. Suits like this one to halt ongoing investigations are classically unripe because investigations are by their very nature preliminary. *See, e.g.*, *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) ("[U]ncertainties" in whether an investigation will result in findings or enforcement "render plaintiffs' action unfit for judicial resolution at this time."); *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Cntys.*, 150 F. App'x 389, 397–98 (6th Cir. 2005) ("Without knowledge of what that form [any enforcement action] will be, this court does not have the concrete context necessary for judicial review."); *CBA Pharma, Inc. v. Harvey*, No. 3:21-CV-00014-GFVT, 2022 WL 983143, at *3 (E.D. Ky. Mar. 30, 2022), *aff'd sub nom. CBA Pharma, Inc. v. Perry*, No. 22-5358, 2023 WL 129240 (6th Cir. Jan. 9, 2023) ("The investigation in this matter has not concluded, which means that the Department has not even decided whether it will, in fact, take any action against CBA. There has been no final agency action in this matter.").

Plaintiffs' half-hearted response runs five sentences in total, and completely ignores the precedent—including binding Ninth Circuit precedent—cited by Defendants. Dkt No. 24 at 24. Plaintiffs fail to explain how EEB's ongoing proceedings constitute a final agency action, how they would be "direct[ly] and immediate[ly]" harmed by this Court's withholding of review at

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

this juncture, *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009), or why this Court should ignore the very real hardship to the EEB resulting from having to litigate the merits of an ongoing investigation *See* Dkt. No. 19 at 10–13. Their claim is indisputably unripe.

**B.    Even if Plaintiffs' Claims Were Ripe, *Younger v. Harris* Requires Abstention**

Moving beyond ripeness, Plaintiffs' claims also fail at the threshold because they are subject to *Younger* abstention. Dkt. No. 19 at 13–19. Judge Settle held as much under nearly identical circumstances in *Samples v. Washington State Exec. Ethics Bd.*, No. C12-5418, 2012 WL 5285202, at *1 (W.D. Wash. Oct. 25, 2012). Plaintiffs only dispute three-and-a-half of the five *Younger* factors,[1] but none of their arguments hold water.

*First*, with respect to Plaintiff Flaxman only, Plaintiffs assert there is no ongoing EEB proceeding with respect to one of the two proceedings against him because the older proceeding was dismissed in his favor. Dkt. No. 24 at 25–27. They do not dispute, however, that his second proceeding remains ongoing, which is reason enough to reject this argument. Further, with respect to the proceeding that was decided in his favor, he obviously does not have any live dispute because he got what he wanted—he won. *See New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 1526 (2020) (vacating judgment as moot where New York City amended its laws to grant "the precise relief that petitioners requested in the prayer for relief in their complaint" notwithstanding requests for declaratory and injunctive relief from future constitutional violations). Plaintiffs seek only injunctive and declaratory relief, and the dismissal of the first EEB proceeding means there is no longer anything to enjoin or declare unlawful. *See Garcia v. Hobbs*, No. 22-cv-05152, 2023 WL 5822461, at *1 (W.D. Wash.

---

[1] While Plaintiffs amended their complaint to say they ""are not asking the Court to interfere with any administrative proceeding pending before the EEB," Dkt. No. 15 ¶ 55, ostensibly in an effort to avoid *Younger*, they now appear to concede that is exactly what they're doing. *Compare* Dkt. No. 19 at 18–19 (explaining how granting Plaintiffs relief would effectively enjoin the EEB's proceedings) with Dkt. No. 19 at 25–30 (failing to argue otherwise in response).

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO.  2:23-cv-01581-KKE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Sept. 8, 2023).[2] Plaintiffs cannot rely on one moot dispute (out of three) to get around the clear requirements of *Younger*.

*Second*, Plaintiffs dispute that the pending EEB investigations are the type of civil enforcement proceeding to which *Younger* applies. Dkt. No. 24 at 28–29. But as Defendants noted in their motion to dismiss, *Younger* applies to "civil enforcement proceedings initiated by the state 'to sanction the federal plaintiff . . . for some wrongful act,' including investigations 'often culminating in the filing of a formal complaint or charges[.]'" *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655, 657 (9th Cir. 2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79–80 (2013)). Plaintiffs do not dispute—and cannot dispute—that EEB proceedings fit this definition to a T. Instead, they try to attack *Samples*, claiming it relied on a Ninth Circuit case that was subsequently overruled, following *Sprint*. Dkt. No. 24 at 29. Even if this were correct—and it is not[3]—it is a red herring: under the undoubtedly applicable standard outlined in *Sprint*, an EEB proceeding is precisely the type of civil enforcement action to which *Younger* applies. Again, Plaintiffs don't even attempt to argue otherwise.

*Third*, Plaintiffs argue "[t]he ongoing proceeding before the EEB against plaintiff Hagopian does not implicate important state interests" because, in Plaintiffs' view, the alleged

---

[2] Plaintiffs seek an exception to mootness by arguing that Professor Flaxman's alleged injury is capable of repetition yet evading review, but in light of the fact that he has a pending proceeding before the EEB that offers him an opportunity to raise his constitutional concerns, there is no reason to apply an exception to mootness.

[3] Specifically, Plaintiffs' contention is wrong in two respects. First, the Ninth Circuit's limited recognition that *San Jose* had been abrogated by *Sprint* had nothing whatsoever to do with the issues in this case. Rather, in *ReadyLink*, the Ninth Circuit noted confusion in its own precedent on "whether *Younger* applies only to state-initiated proceedings," or whether it could also be applied to certain private disputes. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014). To be clear, this question is irrelevant here, because there is no dispute that *Younger* does apply to state-initiated proceedings. In any event, the Ninth Circuit then pointed to *San Jose* as a case in which it said that *Younger* only applies to "a state-initiated proceeding," and compared it with another case in which it suggested *Younger* could apply to certain purely private disputes. *Id.* (quoting *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1093 (9th Cir. 2008)). Then, following the paragraph Plaintiffs block-quote, the Ninth Circuit notes that "[f]or orders at the 'core' of the judicial process, the underlying state proceeding plainly need not have been initiated by the state." *ReadyLink*, 754 F.3d at 759. Again, totally irrelevant to this case, because the EEB proceeding is obviously a state proceeding.

And second, *Samples* hardly "appl[ied] the holding of *San Jose Silicon Valley Chamber of Com. Pol. Action Comm.*, 546 F.3d at 1093, that *Younger* applies 'to state-initiated proceedings,'" Dkt. No. 24 at 28, because in *Samples* no party disputed that an EEB proceeding was the type of proceeding to which *Younger* applied. *Samples*, 2012 WL 5285202, at *2.

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

violations are trivial. Dkt. No. 24 at 29–30. But as Defendants already pointed out, this line of argument is squarely foreclosed by precedent. *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003) ("The importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case."); Dkt. No. 19 at 16. Whether Plaintiffs believe their own alleged violations are serious or not, it is beyond peradventure that enforcing the Ethics in Public Service Act furthers compelling state interests. *See* RCW 42.52.900 (finding that ensuring public employment "not be used for personal gain or private advantage" is of "[p]aramount" importance to the State); *see also Samples*, 2012 WL 5285202, at *2 (concluding that "the 'important state interest' requirement is easily satisfied" where "the Board is acting in an enforcement posture regulating the ethical standards of state employees").

*Finally*, Plaintiffs insist they will not have an opportunity to raise their constitutional claims in state court because "[t]he EEB intends to use emails it found during that search in the ongoing proceedings, but Washington courts, like the Ninth Circuit, have never recognized a motion to suppress unlawfully seized evidence in a civil case." Dkt. No. 24 at 27. Plaintiffs will have an opportunity to raise their constitutional objections in state-court review of the EEB proceedings. Dkt. No. 19 at 17. "No more is required to invoke *Younger* abstention" *Juidice v. Vail*, 430 U.S. 327, 337 (1977).

Plaintiffs can raise each of their arguments in State court, including that the manner in which the EEB conducts email searches is unconstitutional. That is all that is required under *Younger*. Plaintiffs' efforts to create a new and novel *Younger* requirement—whereby *Younger* can only apply where Plaintiffs have the specific opportunity to challenge the fruits of an allegedly unconstitutional investigation—is not supported by any case law, and does not save

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

their claims here. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986) ("[I]t is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding.").[4]

### C. Separate from Ripeness and Abstention, Plaintiffs' Complaint Fails to State a Plausible Claim for Relief

Even if the Court determines Plaintiffs claims are ripe *and* declines to abstain pursuant to the principles set forth in *Younger*, dismissal is still required under Rule 12(b)(6) for Plaintiffs' failure to state a plausible claim for relief based on their speech or the contents of their State-issued email accounts. The central assumption underlying their claim is that the UW-hosted listserv is a "public forum," akin to "a municipally owned [concert] venue," Dkt. No. 24 at 7. But that is just not the case.

Plaintiffs cite to a University of Washington webpage in an attempt to show the UW-hosted listserv is a "public forum." *See* Dkt. No. 24 at 5 (citing https://depts.washington.edu/uwaaup/wordpress/listserver). It is questionable whether such evidence is relevant for purposes of Rule 12(b)(6), but even the webpage Plaintiffs cite makes clear the listserv is a "moderated forum" and "not an open listserv." *See id*. Indeed, as the UW webpage plainly states, the listserv "**is not an open forum**." (emphasis added). Notably, the UW webpage also includes a non-exhaustive list of reasons why any message to the listserv may be rejected for running afoul of the moderation guidelines, including incivility, redundancy, inconsequentiality, political advocacy, reference to "non-AAUP events and/or advertising," or

---

[4] Although Plaintiffs do not develop the argument, they cite *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 528 (9th Cir. 2015) for the proposition that "[Plaintiffs'] constitutional challenge [to vindicate] First Amendment [rights is] the kind of case 'that the federal courts are particularly well-suited to hear.'" Dkt. No. 24 at 2. That case is inapposite because it concerned *Pullman* abstention, which indeed has narrowed application in the First Amendment context. *See Porter v. Jones*, 319 F.3d 483, 486–87 (9th Cir.2003) ("It is rarely appropriate for a federal court to abstain under *Pullman* in a First Amendment case[.]"). But as Defendants already explained in their Reply in Support of Motion for Extension, under *Younger*, "courts routinely abstain from deciding First Amendment challenges to ongoing state proceedings." Dkt. No. 18 at 4 (citing *Samples*, 2012 WL 5285202, at *1; *Citizens for Free Speech, LLC*, 953 F.3d at 657; *Gilbertson v. Albright*, 381 F.3d 965, 982 (9th Cir. 2004); and *San Jose Silicon Valley Chamber of Commerce Political Action Committee*, 546 F.3d at 1096). Indeed, *Younger* itself was a First Amendment challenge. *Id.* at 3.

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  even the fact that an individual user sends too many messages. *Id.* ("Moderators regard our list
2  somewhat like letters to the editor . . . We may need to impose individual moratoriums on
3  occasion to maintain the quality of the forum."). Indeed, Plaintiffs themselves *admit* they limit
4  listserv postings based on content to ensure subscribers' "inboxes [are not] overwhelmed with
5  messages or personal attacks." Dkt. No. 24 at 6; *see also id.* ("The list is 'moderated' which
6  means that *each posting must be approved by a 'moderator'* before it can be electronically
7  transmitted by email to persons who have subscribed to the list.") (emphasis added). In short,
8  this is no public forum.

9        Plaintiffs next try to distinguish the instant case from *Knudsen v. Washington State*
10 *Executive Ethics Board*—a directly on-point case in which a Washington state court dismissed
11 a community college professor's challenge to an EEB investigation and ruled that the professor's
12 state-issued email address did not constitute a public forum. 156 Wash. App. 852, 860–66
13 (2010). Plaintiffs urge that the instant case is distinguishable because *Knudsen* involved
14 state-hosted email addresses as opposed to a state-hosted faculty email listserv or "internet
15 discussion list." Dkt. No. 24 at 10–11. According to Plaintiffs, "[t]he emailing in *Knudson* [sic]
16 from an individual account directly to other individual accounts is unlike the exchange of ideas
17 on an internet discussion list." *Id.* Plaintiffs, however, never cite any legal authority to support
18 their argument, nor do they explain how the distinction makes any material difference, especially
19 considering Plaintiffs use their state-hosted email addresses to send messages to the state-hosted
20 listserv, which then distributes those emails to individual accounts. As *Knudsen* makes clear,
21 Plaintiffs' "public forum" argument fails as a matter of law.

22       Plaintiffs' attempt to compare the faculty concerns listserv to the public concert venue in
23 *Cinevision* is equally unavailing and ignores fundamental differences between the cases.
24 *See* Dkt. No. 24 at 7–8 (citing *Cinevision Corp. v. City of Burbank*, 745 F.2d 560
25 (9th Cir. 1984)). Most notably, Plaintiffs—unlike the concert promoters or bands at issue in
26 *Cinevision*—are public employees using their government email addresses to do their jobs and

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

are thus subject to the Ethics in Public Service Act. *See Idaho State Univ. Fac. Ass'n for the Pres. of the First Amend. v. Idaho State Univ.*, 857 F. Supp. 2d 1055, 1058 (D. Idaho 2012) (holding in the context of a university email listserv that where the plaintiff professors' speech was "job-related" and the university had "control" of the listserv in question, that "basically ends the analysis" and plaintiffs "are not entitled to injunctive relief").[5] Unlike members of an indie rock band, Plaintiffs are state employees with corresponding statutory and ethical obligations, and the State has a direct interest in ensuring they abide by those obligations, making Plaintiffs' tenuous comparison to a public concert venue irrelevant. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir. 2011) ("The State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968)).

Next, Plaintiffs attack a strawman when they argue that UW email accounts should not be considered public records merely because they are "reproducible." Dkt. No. 24 at 17–18 (citing WAC 292-110-010). It should go without saying, but UW email accounts are public records because they are indisputably subject to Washington's Public Records Act. RCW 42.56.010(3); RCW 42.56.070. That point, which Plaintiffs reluctantly concede (Dkt. No. 24 at 18), is the beginning and end of Plaintiffs' claim to a protected privacy interest in their UW emails.[6]

---

[5] Plaintiffs' attempts to rely on similar cases—including *Widmar v. Vincent*, 454 U.S. 263 (1981) and *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995), *see* Dkt. No. 24 at 8-10—fail for the same reasons.

[6] Plaintiffs quote from a letter from the Chancellor of the University of Wisconsin to suggest that maybe faculty emails ought not to be public records. Dkt. No. 24 at 19–20 (quoting Jonathan Peters & Charles N. Davis, *When Open Government and Academic Freedom Collide*, 12 FIRST AMEND. L. REV. 295, 324 (2013) (in turn quoting Biddy Martin, Chancellor, Chancellor's Message on Academic Freedom and Open Records, Univ. of Wisconsin-Madison News (Apr. 1, 2011), available at http://www.news.wisc.edu/19190)). But this is an argument for the Legislature. The fact is, UW emails *are* public records in Washington, and a letter from the Chancellor of a different state's public university does not control.

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

To be sure, reproducibility does matter, but only because things that are not reproducible—phone calls, smoke signals, whatever—do not create records that can be produced to a requester. *See* RCW 42.56.010(3), (4) (defining "[p]ublic record" to include only "writing[s]," and defining "writing" to include, *inter alia*, "every . . . means of recording any form of communication or representation"). Thus, the regulation Plaintiffs attempt to lampoon explicitly distinguishes "electronic mail, facsimile transmissions, the internet, and voice mail," which "may create an electronic record," from "other forms of communication such as a telephone conversation," which do not. WAC 292-110-010(4). Because the former create reproducible writings, while the latter does not, only the former create public records. That is, while reproducibility is a necessary condition for application of the PRA, it is in no sense the *justification*.

Finally, Plaintiffs attempt to salvage their case by alleging the EEB's practice of reviewing Plaintiffs' state-hosted emails somehow violates FERPA, a statute the Supreme Court has made clear confers no private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) ("[T]here is no question that FERPA's nondisclosure provisions fail to confer enforceable rights."); *see also Smith on behalf of C.M. v. Tacoma Sch. Dist.*, 476 F. Supp. 3d 1112, 1136 (W.D. Wash. 2020) (citing *Gonzaga* and concluding plaintiff "has no private right of action to remedy an alleged FERPA violation"). Nevertheless, Plaintiffs confusingly urge that they are not actually bringing a private right of action pursuant to FERPA but are instead citing FERPA "to demonstrate the importance of [Plaintiffs'] rights trampled on by the EEB." Dkt. No. 24 at 22. This argument falls flat from the outset, as Plaintiffs have no rights under FERPA for anyone—much less the EEB—to trample. Indeed, it would be difficult to imagine how FERPA could be more irrelevant to Plaintiffs' claims: (1) Plaintiffs' have no enforceable rights under FERPA; (2) FERPA confers no private right of action to Plaintiffs or anyone else; (3) if anyone *had* enforceable rights, it would be the students whose information is protected, not Plaintiffs; (4) Plaintiffs' allegation that the emails EEB reviewed as part of its investigation *might* have

DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

included information protected by FERPA is entirely speculative; and (5) Plaintiffs do not even allege any "public disclosure" of students' protected information, which is FERPA's primary focus. In short, Plaintiffs' attempted reliance on FERPA to prop up their fundamentally deficient complaint is a red herring, and the Court should reject it.

### III.   CONCLUSION

For the foregoing reasons, as well as those detailed in Defendants' Renewed Motion to Dismiss, Defendants respectfully request the Court dismiss Plaintiffs' First Amended Complaint with prejudice and award Defendants their costs and fees for responding to Plaintiffs' complaints.

DATED this 5th day of January, 2024.

ROBERT W. FERGUSON
Attorney General

*/s/ Nathan K. Bays*
NATHAN K. BAYS, WSBA #43025
ANDREW R.W. HUGHES, WSBA #49515
Assistant Attorneys General
*Attorneys for Defendants Bob Ferguson and Kate Reynolds*

I certify that this document contains 4,146 words, in accordance with LCR 7(e)(3).

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

## **DECLARATION OF SERVICE**

I declare that on this day I caused this document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of this document upon all counsel of record.

DATED this 5th day of January, 2024, at Seattle, Washington.

*/s/ Nathan K. Bays*
NATHAN K. BAYS, WSBA #43025
Assistant Attorney General

DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION TO DISMISS
NO. 2:23-cv-01581-KKE

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744