UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABRAHAM FLAXMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BOB FERGUSON, et al., <br><br> Defendants. | CASE NO. C23-1581-KKE <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on the Defendants' Motion to Dismiss. Dkt. No. 19. The Court has reviewed the parties' briefing and the balance of the record, and for the following reasons grants Defendants' motion.

## I.   BACKGROUND[1]

Plaintiff Abraham Flaxman is an associate professor of Global Health at the University of Washington ("UW"). Dkt. No. 15 ¶ 5. Plaintiff Amy Hagopian is a professor emeritus in UW's School of Public Health. *Id*. Flaxman and Hagopian are two of the 2,185 subscribers to UW's Faculty Issues and Concerns email mailing list ("the mailing list"). *Id*. ¶¶ 10–12, 98–99. Each email sent to the mailing list must be approved by a moderator before it can be transmitted to subscribers, and Flaxman and Hagopian serve as the two primary volunteer moderators. *Id*. ¶¶ 14,

---

[1] This section is based on the facts alleged in the First Amended Complaint (Dkt. No. 15), which are assumed to be true for purposes of resolving the pending motion.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 1

16.

Washington's Ethics in Public Service Act prohibits the use of state resources for *inter alia* private gain or political campaigns. *See* WASH. REV. CODE §§ 42.52.160, 42.52.180. The Executive Ethics Board is vested with the power to investigate complaints and impose sanctions under the Ethics in Public Service Act. *See* WASH. REV. CODE § 42.52.360(3)(d)–(e). The Executive Ethics Board adopted a rule permitting anonymous complaints. *See* WASH. ADMIN. CODE § 291-100-030(2)(a). When investigating a mailing list-related complaint under the Ethics in Public Service statute, the Executive Ethics Board reviews every email sent or received by the subject of a complaint, not only emails to or from the mailing list. Dkt. No. 15 ¶¶ 39–41.

In December 2022, the Executive Ethics Board received an anonymous complaint alleging that Flaxman used public resources for political campaigns, by forwarding an email written by a list member to the entire mailing list. Dkt. No. 15 ¶¶ 56–58. Specifically, the forwarded email at issue in this complaint reads:

> I am volunteering with Whole Washington, a campaign to bring universal healthcare to Washington state. It seems like many people on the list expressing concern about Regence's ever shrinking provider list (my PT left their network this year saying Regence hasn't increased their reimbursement in over a decade and they can't really afford to continue) might be interested in helping this measure get on the ballot. The Whole Washington website also has a lot of information about how it would work and expectations around cost, coverage, and whatnot.

Dkt. No. 15-1 at 3. After this narrative portion, the email provides a link where "[i]nterested people can see where to sign" and informs readers that "[p]eople who want to collect signatures from family and friends can pick up supplies at any of the bin hosts on the map." *Id*.

After the Executive Ethics Board received the complaint regarding this email that Flaxman forwarded, the Executive Ethics Board gained access to all of Flaxman's emails for the three-month period surrounding the date when the subject email was forwarded. Dkt. No. 15 ¶ 69. Based on that review, the Executive Ethics Board found reasonable cause to believe that Flaxman had

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 2

violated the Ethics in Public Service Act, and suggested that the penalty for this violation may be more than $500. *Id*. ¶ 70. Upon reconsideration, however, the Executive Ethics Board terminated the matter in Flaxman's favor. *Id*. ¶ 71.

There are two other complaints currently pending against Plaintiffs. In December 2022, the Executive Ethics Board received an anonymous complaint against Hagopian, alleging that she had used public resources for a political campaign by forwarding an email to the mailing list about a strike at the University of California. Dkt. No. 15 ¶¶ 72–74. The forwarded email included a request to consider donating to the strike fund. *Id*. ¶ 75; Dkt. No. 15-2 at 3–5. The Executive Ethics Board found that this email violated the Ethics in Public Service Act by soliciting donations, and that 27 other emails discovered during the investigation were used for Hagopian's private benefit, also in violation of the Ethics in Public Service Act. Dkt. No. 15 ¶¶ 82–83. The Executive Ethics Board found reasonable cause to believe that the appropriate sanction would be more than $500, and the matter is currently awaiting a public hearing. *Id*. ¶¶ 85, 88.

In June 2023, the Executive Ethics Board received a complaint that Flaxman had forwarded an email to the mailing list that promoted a political campaign. Dkt. No. 15 ¶¶ 89–90. The email in question forwarded information about a potential strike of UW post-doctoral and research scientists/engineers, and the forwarded information provided a list of ways to support the scholars contemplating a strike, which included a donation to a hardship fund. *Id*. ¶¶ 91–92; Dkt. No. 15-3 at 3–8. The complaint related to this email is still pending before the Executive Ethics Board. Dkt. No. 15 ¶ 97.

Plaintiffs filed this action in October 2023 and amended their complaint in November 2023, on behalf of themselves and a putative class composed of the members of the mailing list, to challenge certain policies and procedures of the Executive Ethics Board. *See* Dkt. Nos. 1, 15. Specifically, Plaintiffs allege that the Executive Ethics Board's policy of permitting anonymous

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 3

complaints allows complainants to intimidate and silence specific topics on the mailing list, which may chill the exercise of First Amendment rights. *See* Dkt. No. 15 ¶¶ 36, 100(a). Plaintiffs also allege that the Executive Ethics Board's "boundless examination" of faculty email accounts as violating the First Amendment and privacy rights as to personnel matters and education records under the Family Educational Rights and Privacy Act ("FERPA").[2] *See id*. ¶¶ 44–47, 100(b). Plaintiffs next allege that the Executive Ethics Board's focus on inconsequential fundraising requests within emails chills the exercise of First Amendment rights. *See id*. ¶¶ 48–51. Lastly, Plaintiffs allege that the Executive Ethics Board sets penalties that amount to "excessive fines" prohibited by the Eighth Amendment, and that chill academic discussions on the mailing list. *See id*. ¶¶ 52–54. Plaintiffs request unspecified injunctive and/or declaratory relief to prevent the Executive Ethics Board from applying its policies to violate Plaintiffs' constitutional and privacy rights, although the First Amended Complaint also states that Plaintiffs are "not asking the Court to interfere with any administrative proceedings pending before the [Executive Ethics Board]." *Id*. ¶¶ 55, 100–02.

Defendants Bob Ferguson (Attorney General of the State of Washington) and Kate Reynolds (Executive Director of the Executive Ethics Board) have moved to dismiss this action on the grounds that the Court lacks jurisdiction or should abstain from exercising jurisdiction. Dkt. No. 19. Defendants argue in the alternative that the First Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a plausible claim for relief. *Id*. And because Plaintiffs' First Amended Complaint fails to cure the deficiencies previously identified in Defendants' first Motion to Dismiss, Defendants request reasonable attorney fees and costs in bringing the motion. *Id*. The Court now turns to consider the motion.

---

[2] 20 U.S.C. § 1232g.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 4

## II. ANALYSIS

### A. Legal Standards.

Dismissal under Federal Rule of Civil Procedure 12(b)(1) is required if the court lacks jurisdiction. Where, as here, a party brings a facial[3] attack on the existence of federal subject-matter jurisdiction, the court accepts "plaintiff's allegations as true and draw[s] all reasonable inferences in the plaintiff's favor" to determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### B. Plaintiffs' Claims are Not Ripe.

The requirement that justiciable disputes must be ripe "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[.]" *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Ripeness has both constitutional and prudential components. The question of constitutional ripeness is "synonymous with" the injury-in-fact inquiry for purposes of standing. *See Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022). "Whether framed as an issue of standing or ripeness, an injury must involve 'an invasion of a legally protected interest that is (a)

---

[3] Although Defendants do not explicitly state that their attack is facial, their briefing does not challenge Plaintiffs' allegations and instead assumes that they are true. *See* Dkt. Nos. 19, 25.

concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

A claim is prudentially ripe if it presents an issue fit for judicial resolution and withholding judicial resolution would result in hardship to the plaintiff. *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021).

For the following reasons, the Court finds that Plaintiffs' claims are neither constitutionally nor prudentially ripe, and must therefore be dismissed.

1. <u>Plaintiffs' Claims are Not Constitutionally Ripe Because They Have Not Alleged a Concrete Injury.</u>

At the outset, the Court notes that Defendants correctly emphasize (Dkt. No. 19 at 3) that the First Amended Complaint does not list any particular cause of action. *See* Dkt. No. 15 ¶ 100 (asking whether policies and practices of the Executive Ethics Board deprives mailing list subscribers of First Amendment rights, in a variety of ways). To the extent that claims can be discerned in the First Amended Complaint, Defendants argue that they are not constitutionally ripe because Plaintiffs have not alleged an injury in fact, but have only vaguely insinuated that the Executive Ethics Board's investigations *may* chill protected speech. *See* Dkt. No. 19 at 7. According to Defendants, Plaintiffs' failure to specifically allege that their speech has been chilled renders their claims speculative and therefore unripe. *See id*. at 9. Plaintiffs disagree, arguing that the Executive Ethics Board's searches of their email files and threats of a fine of more than $500 constitute concrete harms. *See* Dkt. No. 24 at 23.

The Court agrees with Defendants that Plaintiffs' First Amended Complaint fails to allege a concrete injury in fact. First, as to the email searches, Plaintiffs' emails are public records because they are public employees, and they do not have a First Amendment privacy interest in them that is violated by disclosure to the Executive Ethics Board. *See* WASH. REV. CODE §§

42.56.010(3), 42.56.070; WASH. ADMIN. CODE § 292-110-010(4) ("Technologies such as electronic mail … are reproducible and therefore cannot be considered private. Such records may be subject to disclosure under the Public Records Act, or may be disclosed for audit or legitimate state operational or management purposes"). To the extent that students may have a privacy interest in education information contained in Plaintiffs' emails under FERPA, Plaintiffs are not students and would not have standing to bring a claim based on that interest.[4] *See* Dkt. No. 19 at 10. Moreover, FERPA confers no private right of action on students, Plaintiffs, or anyone else to remedy an alleged FERPA violation. *See Smith on behalf of C.M. v. Tacoma Sch. Dist.*, 476 F. Supp. 3d 1112, 1136 (W.D. Wash. 2020).

Second, Plaintiffs have failed to allege that the mere threat of monetary fines has chilled their speech. Plaintiffs' First Amended Complaint questions whether the practice of imposing fines would deprive Plaintiffs of constitutional rights, but does not allege that the mere threat of a fine has in fact chilled speech protected by the First Amendment. *See* Dkt. No. 15 ¶ 100(c)–(e). In the absence of such an allegation that any chilling (such as self-censorship) has occurred as a result of the potential fines, Plaintiffs have failed to plead the existence of a concrete injury, even under the less stringent ripeness standards that apply to First Amendment claims. *See Peace Ranch, LLC v. Bonta*, __ F.4th __, 2024 WL 562782, at *4 n.5 (9th Cir. Feb. 13, 2024); *Wolfson v. Brammer*, 616 F.3d 1045, 1058–60 (9th Cir. 2010).

Because Plaintiffs' First Amended Complaint fails to allege a concrete injury to their legally protected rights, their claims are not constitutionally ripe.

---

[4] Plaintiffs' Opposition disavows any attempt to enforce rights under FERPA, but argues that they refer to FERPA privacy rights "to demonstrate the importance of their rights trampled on by the [Executive Ethics Board]." Dkt. No. 24 at 22. But again, FERPA withholds federal funding to institutions that disclose *student* education information to unauthorized recipients without parental permission. *See* 20 U.S.C. § 1232g(b)(1). Thus, any reference to FERPA is unavailing for the purpose of establishing that *Plaintiffs'* rights have been violated by a disclosure of their emails.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 7

2. <u>Plaintiffs' Claims are Not Prudentially Ripe Because the Executive Ethics Board has Taken No Final Action Against Them.</u>

Plaintiffs' claims are also prudentially unripe. Plaintiffs' First Amended Complaint acknowledges that the investigatory proceedings before the Executive Ethics Board are ongoing as to the two open complaints against them and no final action has been taken. *See* Dkt. No. 15 ¶¶ 88, 97. In the absence of a final action against them, Plaintiffs' claims are not fit for judicial resolution. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) ("A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.").

Furthermore, Plaintiffs' Opposition fails to identify any hardship that would result if the Court withheld judicial resolution at this time, while the state proceedings are ongoing. *See* Dkt. No. 24 at 24. As noted by Defendants, Plaintiffs have an opportunity to seek judicial review of a final Executive Ethics Board action and they can raise their constitutional claims in that context. *See* Dkt. No. 19 at 12 (citing Wash. Rev. Code § 34.05.570(4)(c)).

Accordingly, the Court finds that Plaintiffs' claims are unripe constitutionally and prudentially, and therefore must be dismissed. In light of this disposition, the Court need not address Defendants' alternate grounds for dismissal. *See* Dkt. No. 19 at 13–23.

C. **Defendants' Request for Fees and Costs is Denied.**

Defendants request an award of their attorney fees and costs in bringing the Motion to Dismiss, under 42 U.S.C. § 1988(b). Although Defendants emphasize that Plaintiffs' First Amended Complaint suffers from the same defects raised in Defendants' motion to dismiss the original Complaint (Dkt. No. 19 at 23), the Court declines to find that Plaintiffs' action is "unreasonable, frivolous, or vexatious." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994). The Court therefore denies Defendants' request for an award of fees and costs.

### III.  CONCLUSION

The Defendants' Motion to Dismiss (Dkt. No. 19) is GRANTED, except to the extent Defendants request an award of fees and costs.  Plaintiffs' claims are DISMISSED without prejudice and the clerk is directed to terminate this action.

Dated this 14th day of February, 2024.

Kymberly K. Evanson
United States District Judge