The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Abraham Flaxman and Amy Hagopian, individually and for a proposed class,<br><br>*Plaintiffs*,<br><br>-vs-<br><br>Nicholas W. Brown, in his official Capacity as the Attorney General of the State of Washington, et al.<br><br>*Defendants*. | Case No. 2:23-cv-01581-KKE<br><br>Memorandum in Opposition to Motion to Dismiss |

This case returns on remand from the Court of Appeals. *Flaxman v. Ferguson*, 151 F.4th 1178 (9th Cir. 2025). Plaintiffs—individually and on



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

behalf of the more than 2,000 subscribers to the University of Washington's "Faculty Issues and Concerns" electronic discussion list—contend that the State of Washington, acting through its Executive Ethics Board, has improperly restricted discussion on that forum. Plaintiff Hagopian also seeks, under the Court's supplemental jurisdiction recognized in *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997), review of the Executive Board's order imposing a monetary sanction.

Defendants are the Attorney General of the State of Washington and the Executive Director of the Executive Ethics Board.[1] Before the Court is defendants' Rule 12(b)(6) motion to dismiss. (ECF No. 44.) The Court should deny the motion for the reasons explained below.

## I. The Complaint Plausibly Alleges That the "Faculty Issues and Concerns" Discussion List Is a Public Forum

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] all factual allegations in the complaint as true." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Under that standard,

[1] Defendants do not dispute that they are the proper parties for plaintiffs' legal challenge.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

the Court should reject defendants' request to conclude, at the pleading stage, that the "Faculty Issues and Concerns" electronic discussion list is not a public forum entitled to First Amendment protection. (ECF No. 44 at 9–11.)

### A. The Facts Concerning the "Faculty Issues and Concerns" Discussion List

For approximately thirty years, the University of Washington has hosted the "Faculty Issues and Concerns" electronic discussion list. (ECF No. 42 at 4, Second Amended Complaint, ¶ 9.) The list is a "discussion list" that facilitates faculty conversations about matters of general higher-education concern. (*Id.* ¶ 10.)

The list is "moderated," meaning each posting must be approved before it is electronically transmitted to subscribers. (*Id.* ¶ 12.) The named plaintiffs, Amy Hagopian and Abraham Flaxman, are professors at the University of Washington, (*id.* ¶¶ 1–2), who serve as volunteer moderators. (*Id.* ¶ 3.) The moderators do not censor or edit postings based on content or subject matter and instead seek to balance open discussion with subscribers' interest in



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

avoiding an overwhelming number of messages and personal attacks. (*Id.* ¶ 16.)

The list is open to full discussion of challenging and important topics of interest to the University of Washington community of scholars even when postings contradict the positions or values of others on the list. (*Id.* ¶ 11.) About 2,300 persons, including plaintiffs, subscribe to the "Faculty Issues and Concerns" discussion list. (*Id.* ¶ 17.)

### B. The Facts Alleged in the Operative Complaint Show That the "Faculty Issues and Concerns" Discussion List Is a Public Forum

The Supreme Court has identified several types of public forums. The first consists of "streets and parks which … have been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (cleaned up).[2] Content-based restrictions on the speech in this type of public forum are subject to strict scrutiny. *Id.* at 45–46.

---

[2] Plaintiffs use (cleaned up) when internal quotation marks, alterations, and citations are omitted from quotations. See Jack Metzler, Cleaning Up Quotations, 18 J. APP. PRAC. & PROCESS 143 (2017).



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

The second category "consists of public property which the state has opened for use by the public as a place of expressive activity." *Perry Educ. Ass'n*, 460 U.S. at 45. Restrictions on speech in this type of public forum must "serve a compelling state interest and … [be] narrowly drawn to achieve that end." *Widmar v. Vincent*, 454 U.S. 263, 274 (1981).

The Ninth Circuit applied this second category in *Cinevision Corp. v. City of Burbank*, 745 F.2d 560 (9th Cir. 1984), which arose from a contract with the City of Burbank to promote concerts at the Starlight Bowl, a municipally owned venue. Under the contract, the City retained the right to disapprove proposed concerts and rejected six of the eight concerts planned for the summer of 1979. Cinevision sued under 42 U.S.C. § 1983, alleging that the City had rejected the concerts because of their content. On appeal from a jury verdict in favor of Cinevision, the Ninth Circuit held that the Starlight Bowl was a "public forum." 745 F.2d at 569–71.

Plaintiffs contend that the University of Washington has established this type of open forum by making its resources available for the "Faculty



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

Issues and Concerns" internet discussion list The Ninth Circuit's reasoning in *Cinevision* supports that conclusion:

> [B]y granting Cinevision access to the Bowl for the presentation of music by a variety of performers, the City transformed publicly owned property into a public forum for expressive activity, even if the expressive activity is promoted by a single entity.

*Id.* at 560.

Here, by making its email resources available to the "Faculty Issues and Concerns" discussion list, the University created a "generally open forum," *Widmar v. Vincent*, 454 U.S. 263, 269 (1981). In *Widmar*, a campus of the University of Missouri "routinely provide[d] University facilities for the meetings of registered organizations." *Id.* at 265. The case arose from the university's decision to bar a student organization that met on campus for religious purposes. *Id.* The Supreme Court held that the University had "created a forum generally open for use by student groups," (*id.* at 267), and could limit the content of the group's intended speech only by showing "that its regulation is necessary to serve a compelling state interest and that it was narrowly drawn to achieve that end." *Id.* at 270.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

The Court reached the same result in *Rosenberger v. Rector and Visitors of the University. of Virginia*, 515 U.S. 819 (1995). There, the University of Virginia subsidized the activities of some student groups but withheld funds from one group because its focus was religious. *Id.* at 827. The Court held that this action violated the First Amendment, reiterating that "[t]he state may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum." *Id.* at 829. (cleaned up) That principle governs plaintiffs' First Amendment claim here.

### C. Defendants' Factual Challenge Is Inappropriate on a Rule 12(b)(6) Motion to Dismiss

Defendants' contention that the "Faculty Issues and Concerns" discussion list is not a public forum rests on *Knudsen v. Washington State Executive Ethics Board*, 156 Wash. App. 852, 235 P.3d 835 (2010). (ECF No. 44 at 10.[3]) But *Knudsen*—a pro-se appeal decided on a materially different record—does not support dismissal at the pleading stage. This is especially true because the

[3] Plaintiffs cite to pages in the motion to dismiss as ECF No. 44 at ___, referring to the ECF page numbers that appear on the upper right of the document, rather than to the page numbers that appear at the bottom center of each page.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

decision of a state intermediate appellate court is not binding on this Court in its interpretation of federal constitutional questions. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 621 (1989). Moreover, *Knudsen* arose from different facts and is not persuasive authority.

*Knudson* was a straightforward application of the "third category" of public communications recognized in *Perry Educ. Ass'n*—a nonpublic forum reserved for school-related business. *Id.* at 48. The plaintiff in *Knudsen* "used state email resources to send an email to every SCC [Spokane Community College] faculty member with a state email address to encourage them to contact and urge legislators to approve two bills." 156 Wash. App. at 861, 235 P.3d at 839. That mass email from a single sender bears little resemblance to the back and forth exchange of ideas on the internet discussion list authorized by the University of Washington.

Defendants mistakenly read *Knudson* as involving a "university listserv." (ECF No. 44 at 10.) The word "listserv" does not appear in the *Knudsen* opinion, and it is possible that defendants are treating this word as



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

equivalent to email. Equating the two is incorrect, as the Ninth Circuit explained in its decision in this case.

A moderated electronic discussion list is structurally distinct from ordinary email. Whereas conventional email involves point-to-point transmission between individual users, a mailing list functions as an automated redistribution platform that disseminates approved messages to the subscriber community, typically subject to moderator control. *See Flaxman v. Ferguson*, 151 F.4th 1178, 1183 (9th Cir. 2025).

Plaintiffs have plausibly alleged that the "Faculty Issues and Concerns" discussion list is an internet discussion list hosted by the University of Washington for faculty conversations about matters of general higher-education concern. (ECF No. 42 at 4, Second Amended Complaint, ¶ 10.) As in *Widmar*, the University, by making its resources available, has created a forum for expressive activity that is entitled to First Amendment protection. 454 U.S. at 267.

For the purposes of defendants' motion to dismiss, the Court should treat the "Faculty Issues and Concerns" discussion list as a public forum. The



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

relevant question on liability, therefore, is whether defendants can show that their policy "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015) (cleaned up). This inquiry is fact dependent and "unsuitable for resolution at the pleading stage." *Duronslet v. County of Los Angeles*, 266 F. Supp. 3d 1213, 1223 (C.D. Cal. 2017). Plaintiffs explain below how they have plausibly alleged that the State of Washington, through its Executive Ethics Board, has interfered, and will continue to interfere, with the free exchange of ideas on the "Faculty Issues and Concerns" discussion list.

## II. The Complaint Plausibly Alleges That the Executive Ethics Board Interferes with Plaintiffs' First, Fourth, and Eighth Amendment Rights

The Executive Ethics Board ("EEB") enforces the Ethics in Public Service statute, Wash. Rev. Code § 42.52. As defendants agree, (ECF No. 44 at 14), a person accused of a violation of the statute may not raise constitutional objections before the EEB. Even when a person is accused of speech that is protected by the First Amendment, the EEB lacks authority to consider the



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

constitutional issue. Instead, vindication of constitutional protections must await the termination of proceedings at the EEB.

Plaintiffs detail in their complaint how the EEB has applied its policies to chill academic discussion by suppressing benign requests for financial contribution, conducting warrantless searches of faculty email without regard to whether the messages involved the "Faculty Issues and Concerns" discussion list, and imposing penalties for conduct that caused at most a de minimis expense to the state. (ECF No. 42 at 9, 10, 26, Second Amended Complaint ¶¶ 34, 41, 99.) As the Court of Appeals observed in this case, "[t]he entire thrust of the complaint is that the Ethics Board's policies have created First Amendment harm and pose a threat of imminent future First Amendment harm." *Flaxman v. Ferguson*, 151 F.4th at 1187. This is not a case involving the kind of vague and undifferentiated pleading addressed in *Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. 2026). Plaintiffs explain below how their allegations plausibly show both constitutional violations and arbitrary enforcement by the EEB.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

### A. The Complaint Sets Out Detailed Factual Allegations of the Board's Application of Its Policies to the Named Plaintiffs

#### 1. Plaintiff Flaxman, Complaint 2022–046

On November 29, 2022, plaintiff Flaxman forwarded a message to the "Faculty Issues and Concerns" discussion list "on the topic of health insurance." (ECF No. 42 at 12–13, Second Amended Complaint ¶¶ 50–51.) The message provided information about "Whole Washington, a campaign to bring universal healthcare to Washington State." (*Id.* ¶ 51.)

The message also stated that "interested people can see where to sign here," and included a hyperlink to Whole Washington, a coalition of healthcare professionals and volunteers from across Washington State. (*Id.* ¶ 52.) The forwarded message also included the statement: "People who want to collect signatures from people and friends can pick up supplies at any of the bin hosts on the map." (*Id.*)

On December 8, 2022, the EEB received an anonymous complaint alleging that Plaintiff Flaxman had "use[d] public resources for political



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

campaigns." (*Id.* ¶ 49.) The complaint quoted the text of the message that Plaintiff Flaxman had forwarded:

> I am volunteering with Whole Washington, a campaign to bring universal healthcare to Washington state. It seems like many people on the list expressing concern about Regence's ever shrinking provider list (my PT left their network this year saying Regence hasn't increased their reimbursement in over a decade and they can't really afford to continue) might be interested in helping this measure get on the ballot. The Whole Washington website also has a lot of information about how it would work and expectations around cost, coverage, and whatnot.

(*Id.* ¶ 51.)

The EEB notified Plaintiff Flaxman of the anonymous complaint and requested that he respond. (*Id.* ¶ 55.) Flaxman responded by advising the EEB that his email to the "Faculty Issues and Concerns" list was "expressing views about a matter of public concern," and asked the EEB to decline to investigate what he described as a "prank complaint intended to harass and to misuse state resources to investigate imaginary wrongdoing." (*Id.* ¶ 56.) Plaintiff Flaxman also advised the EEB as follows:

> I read this email as identifying a matter of concern to the persons who subscribe to the list. My understanding is that expressing views about a matter of public concern implicates the First



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

> Amendment. I am not, of course, an attorney, but since grammar school, my understanding has been that the government cannot restrict speech about matters of public concern. I read the email as stating, in a neutral manner, information about how persons interested in helping to get a particular measure on the ballot might participate in that process. I did not read the message as advocating for or against any potential ballot measure.

(*Id.* ¶ 57.)

The EEB rejected Flaxman's request to dismiss the complaint and investigated the anonymous complaint by gaining access to all emails Flaxman sent and received through his University of Washington account for a three-month period. (*Id.* ¶¶ 60–61.) The EEB initially concluded that Flaxman had violated RCW 42.52.180 by using state resources to support a ballot proposition. (*Id.* ¶¶ 58, 62.) The EEB further concluded that Flaxman should be fined in an amount that "may be more than $500." (*Id.* ¶ 62.) The EEB terminated the matter in favor of Flaxman after he retained counsel. (*Id.* ¶ 63.)

These allegations support plaintiffs' contention that the EEB's enforcement of RCW 42.52 chills protected speech.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

**2. Plaintiff Hagopian, Complaint 2022–047**

Plaintiff Hagopian forwarded a message to the "Faculty Issues and Concerns" discussion list about a worker's strike at the University of California. (*Id.* ¶ 67.) The message included a short, five-word sentence asking the reader to "[c]onsider donating to our strike fund." (*Id.*)

On December 10, 2022, the EEB received an anonymous complaint alleging that Plaintiff Hagopian "use[d] public resources for political campaigns" when she forwarded the email about the strike. (*Id.* ¶ 64.) The EEB notified Plaintiff Hagopian of the complaint and requested a response. (*Id.* ¶ 70.) Plaintiff Hagopian responded that she had forwarded the email because "I thought it would interest UW faculty on the AAUP list." (*Id.* ¶ 71.) She further stated that "[t]his sort of message sharing is standard on our list server, and is not to my knowledge a violation of any state regulation." (*Id.*)

Although Hagopian admitted sending the email, the EEB searched nearly 3,000 email messages she had received at her University of Washington email account between June 20, 2022 and November 29, 2022. (*Id.* ¶ 73.) From this tranche, the EEB identified 159 emails (including 116 emails it

found in the "Junk Mail" folder) that it concluded showed Hagopian's use of state resources for private benefit. (*Id.* ¶ 74.)

The EEB imposed a $750 penalty, *id.* ¶ 76, after concluding that Hagopian violated RCW 42.52.160 by forwarding the message to the "Faculty Issues and Concerns" discussion list, (*id.* ¶ 77), and by using state resources for personal benefit based on 27 emails received in her University of Washington email account. (*Id.* ¶ 78.) Hagopian timely sought administrative review, which she brings as a supplemental claim in this action. (*Id.* ¶ 83.)

These allegations likewise support plaintiffs' contention that the EEB's enforcement of RCW 42.52 chills protected academic speech through intrusive investigation and monetary penalties.

**3. Plaintiff Flaxman, Complaint No. 2033–051**

On June 5, 2023, plaintiff Flaxman forwarded a message to the "Faculty Issues and Concerns" discussion list conveying information about a potential strike of Postdoctoral Scholars and Research Scientist/Engineers at the University of Washington. (*Id.* ¶¶ 85–86.) The EEB received an anonymous



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

complaint the next day alleging that, by forwarding this email, Flaxman had engaged in "activities incompatible with public duties." (*Id.* ¶ 84.)

In response to the EEB's request for an answer, Flaxman challenged the EEB's authority to act on an anonymous submission. (*Id.* ¶ 91.) He acknowledged forwarding the email to the discussion list, noted that the list functioned as a public forum, and asserted that processing the complaint would itself be a "violation of rights secured by the First Amendment." (*Id.*)

On May 10, 2024, the EEB concluded that "[a]ny violation that may have occurred does not constitute a material violation because it was inadvertent and minor, or has been cured, and, after consideration of all the circumstances, further proceedings would not serve the purpose of this chapter." (*Id.* ¶ 92.)

These allegations support plaintiffs' contention that the EEB's enforcement of RCW 42.52 burdens protected speech, the procedural deficiencies discussed below confirm.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

### B. The Complaint Provides Defendants With Detailed and Ample Notice of Plaintiffs' Legal Theories

Defendants renew their Rule 12(b)(6) challenge on the theory that the Complaint fails to provide adequate notice of Plaintiffs' claims. The pleading itself forecloses that contention.

Plaintiffs identify the specific statutory and constitutional provisions at issue, describe the conduct alleged to violate those provisions, and set out the factual basis for each claim in detail. The Complaint expressly alleges claims under 42 U.S.C. § 1983 for violations of the First, Fourth, and Eighth Amendments and seeks declaratory and injunctive relief setting aside the challenged policies and the monetary sanction imposed on Plaintiff Hagopian.

As the Court of Appeals has repeatedly reaffirmed, a plaintiff need only plausibly allege facts providing defendants fair notice of the claims and the grounds on which they rest. *Johnson v. Riverside Healthcare Sys. LP*, 534 F.3d 1116, 1122 (9th Cir. 2008); *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). Rule 8 requires no more. Nor does Rule 12(b)(6) permit dismissal based on the form of requested equitable relief.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

To the extent Defendants demand greater specificity in the prayer for relief, that contention is misplaced; the Federal Rules require only a demand for relief, and the precise form of equitable relief is determined at the merits stage.

Since the adoption of the Federal Rules of Civil Procedure, it has been "universally considered that the demand for judgment is no part of the cause of action." Charles E. Clark, *The Complaint in Code Pleading*, 35 YALE L.J. 259, 289 (1926). Nearly 80 years ago, the Second Circuit described as "well known" the rule that "the demand for judgment under F.R.C.P. rule 54(c), is not the strictly limiting factor against an appearing defendant that it may have been in some past procedures." *Bowles v. J.J. Schmitt & Co.* 170 F.2d 617, 621 (2d Cir. 1948). The Ninth Circuit applied this rule in *In re Bennett*, 298 F.3d 1059 (9th Cir. 2002): "So long as a party is entitled to relief, a trial court must grant such relief despite the absence of a formal demand in the party's pleadings." *Id.* at 1069.

In a case seeking declaratory and injunctive relief, the remedy "is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

U.S. 682, 702 (1979). As explained below, the operative complaint plausibly alleges violations of the First, Fourth, and Eighth Amendments. The First Amendment claim alone establishes irreparable harm, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *In re Dan Farr Products*, 874 F.3d 590, 597 (9th Cir. 2017) (citing *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976)). The Court should therefore reject Defendants' assertion that the operative complaint is deficient because it fails to detail the precise relief sought. (ECF No. 44 at 8–9.)

### C. Warrantless Searches of Faculty Email Accounts Cannot Be Resolved on a Rule 12(b)(6) Motion

Defendants ask the Court to hold, as a matter of law, that the EEB's warrantless searches of faculty email accounts do not infringe on any rights secured by the First or Fourth Amendment. (ECF No. 44 at 11–12, 18.) Defendants, however, offer only conclusory arguments to support that sweeping request.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

Defendants rely on an administrative regulation adopted by the EEB, WASHINGTON ADMINISTRATIVE CODE ("WAC") 292–110–010(4), which asserts the broad proposition that there is no expectation of privacy in email. (ECF No. 44 at 11.) This assertion is not entitled to deference. Whether a government employee retains a reasonable expectation of privacy in workplace email is a constitutional question for the courts, not one an agency may conclusively resolve by regulation.

Defendants' reliance on the Washington Public Records Act, (ECF No. 44 at 11), is not dispositive of the constitutional question. Defendants argue that "any member of the public (or the press) can review any of the plaintiffs' emails—subject only to narrow, statutory exemptions that Plaintiffs do not invoke here." (*Id.* at 11–12.) But that argument misreads the statute, which limits public records requests to "identifiable records" and provides that "[a] request for all or substantially all records prepared, owned, used, or retained by an agency is not a valid request for identifiable records under this chapter," while clarifying that topic- or keyword-based requests are not treated as requests for all agency records. RCW 42.56.080(1). Accordingly, a



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

blanket request for all emails reviewed by the EEB would not constitute a valid request for identifiable records. *Id.* In any event, the scope of potential public disclosure under a records statute does not itself determine whether a government employee retains a reasonable expectation of privacy for Fourth Amendment purposes.

The Supreme Court has made clear that the mere fact that information is shared with a third party does not automatically defeat Fourth Amendment protection. *Carpenter v. United States*, 585 U.S. 296, 309–13 (2018). Justice Gorsuch observed in dissent "that e-mail should be treated much like the traditional mail it has largely supplanted—as a bailment in which the owner retains a vital and protected legal interest." *Id.* at 389–390 (Gorsuch, J. dissenting).[4]

The Supreme Court's decision in *O'Connor v. Ortega*, 480 U.S. 709 (1987), likewise makes clear that whether a public employee retains a

[4] Plaintiffs cite Justice Gorsuch's dissent for its historical discussion of bailment principles as applied to modern Fourth Amendment doctrine. *Carpenter*, 585 U.S. at 397–404. This discussion does not conflict with the reasoning of the Court's majority opinion. *Id.*



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

reasonable expectation of privacy in workplace communications is a fact-specific inquiry not appropriately resolved at the pleading stage. *Id.* at 717–18.

Defendants read *Carpenter* as establishing a clear rule that "the Fourth Amendment does not apply to the State-issued email accounts at issue here because Plaintiffs lack a privacy interest in them." (ECF No. 44 at 18.) This categorical reading of *Carpenter* is incorrect. The Court there rejected a mechanical application of the third-party doctrine and made clear that the reasonable-expectation-of-privacy inquiry in the digital context remains context dependent. *See Carpenter*, 585 U.S. at 309–13.

This context-dependent inquiry cannot be resolved on the pleadings, where the EEB conducted a broad review of plaintiffs' university email accounts and defendants offer only conclusory assertions in support of their position. As the Ninth Circuit explained in *Leonel v. Am. Airlines, Inc.* 400 F.3d 702 (9th Cir. 2005): "Whether a party has a reasonable expectation of privacy is a context-specific inquiry that should not be adjudicated as a matter of law unless the undisputed material facts show no reasonable expectation of



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

privacy." *Id.* at 712 (cleaned up). Accordingly, defendants' motion to dismiss plaintiffs' Fourth Amendment claim should be denied.

### D. The First Amendment Right to Academic Freedom Limits Overbroad Warrantless Searches of Faculty Email

Defendants rely on state law in asking the Court to dismiss plaintiff's claim that the First Amendment limits overbroad warrantless searches of faculty email. (ECF No. 44 at 9.) But the extent to which the First Amendment protects academic email presents an important and unresolved constitutional question that cannot be resolved by reference to state law.

The Supreme Court recognized a First Amendment right to academic freedom in *Sweezy v. State of New Hampshire*, 354 U.S. 234 (1957). Justice Frankfurter's concurring opinion—treated as controlling under *Marks v. United States*, 430 U.S. 188, 193 (1977)—articulated the governing principle:

> Political power must abstain from intrusion into this activity of freedom, pursued in the interest of wise government and the people's well-being, except for reasons that are exigent and obviously compelling.

*Sweezy*, 354 U.S. at 262 (Frankfurter, J. concurring).



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

The Court reaffirmed the relationship between academic freedom and the First Amendment in *Keyishian v. Board of Regents*, 385 U.S. 589 (1967), describing academic freedom as "of transcendent value to all of us and not merely to the teachers involved." *Id.* at 603. The Court reiterated this principle in *Regents of Univ. of California v. Bakke*, 438 U.S. 265 (1978), observing that "academic freedom, though not a specifically enumerated constitutional right, long has been viewed as a special concern of the First Amendment." *Id.* at 312. The Ninth Circuit has likewise summarized the First Amendment principles animating the right to academic freedom. *See Rodriguez v. Maricopa County Community College District*, 605 F.3d 703, 709–10 (9th Cir. 2010).

Because "the university is a traditional sphere of free expression so fundamental to the functioning of our society," *Rust v. Sullivan*, 500 U.S. 173, 200 (1991), requests to inspect faculty email have often required courts to balance the privacy interests against asserted rights of access.

Academic-freedom concerns have arisen in public-records requests for faculty email. In Wisconsin, for example, a professor asserted that a request



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

for his emails under the state's public–records law interfered with his right to academic freedom. *See* Jonathan Peters & Charles N. Davis, *When Open Government and Academic Freedom Collide*, 12 FIRST AMEND. L. REV. 295, 297–98 (2013). The university concluded that "[h]aving every exchange of ideas subject to public exposure puts academic freedom in peril and threatens the processes by which knowledge is created." *Id.* at 299–300. It therefore balanced "the public interest" in disclosure against "other public interests favoring protection of such communications." *Id.* at 299.

The EEB undertakes no comparable balancing and does not evaluate the potential academic-freedom harms associated with compelled review of faculty email.

The EEB's investigative practices underscore the constitutional concerns presented here. In investigating plaintiff Flaxman, the EEB already possessed the email at issue—an email Flaxman acknowledged sending to the "Faculty Issues and Concerns" list. (ECF. No. 42 at 12, 14, Second Amended Complaint ¶¶ 51, 57.) Nevertheless, the EEB obtained and searched all of Dr. Flaxman's email for the three-month period surrounding the message



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

identified in the complaint. (*Id.* at ¶ 61.) The EEB has not articulated any limiting principle for its claimed right to undertake this intrusive review.

The same pattern appears in the investigation of plaintiff Hagopian. Although Hagopian acknowledged forwarding the email under review, *id.* at ¶ 71), the EEB accessed 2,964 emails Hagopian had received in a five-month period at her university email.[5] (*Id.* ¶ 73.)

Plaintiffs further allege that such reviews predictably encompass student communications protected by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g). (ECF No. 42 at 10, Second Amended Complaint, ¶ 40.) Defendants respond that any FERPA injury runs only to the students. (ECF No. 44 at 12.) But plaintiffs invoke FERPA not to enforce that statute, but to illustrate the substantial privacy and academic-

---

[5] The EEB identified 159 emails that it concluded reflected plaintiff Hagopian's use of state resources for private benefit. (ECF. No. 42 at 19, Second Amended Complaint, ¶ 74.) Of those, the EEB located 116 in Hagopian's "Junk Email" folder, 31 in her "Purges" folder, and four in her "Deleted Items" folder; only eight emails (or less than three percent of the messages the EEB examined) appeared in her "Inbox." (*Id.*) The EEB nevertheless treated these emails as unlawful uses of state resources. (*Id.*)

freedom interests implicated by the EEB's unrestricted email searches. These allegations raise substantial constitutional concerns that cannot be resolved on defendants' Rule 12(b)(6) motion.

### E. Defendants Misapprehend Plaintiff's Challenge to the EEB's Zero Tolerance Email-Review Practices

Members of the "Faculty Issues and Concerns" discussion list sometimes forward materials originating on other lists that address matters of general concern to University of Washington faculty. (ECF. No. 42 at 24–25, Second Amended Complaint, ¶ 93.) These materials may include incidental requests for financial contributions. (*Id.*) Plaintiffs allege that the EEB treats any such request as an unlawful use of state resources for private gain. (*Id.* ¶ 94.) Plaintiffs challenge that practice as chilling speech protected by the First Amendment and contend that the EEB should consider the email as a whole. (*Id.* ¶ 96.)

The EEB does not dispute that it applied this practice to Plaintiff Hagopian when she forwarded to the list a report informing faculty members about issues involved in the University of California university labor strike.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

(*Id.* ¶ 71.) Nor does the EEB disagree that the single sentence—"consider donating to our strike fund"—was a minor portion of the report. (*Id.* ¶ 67.)

Defendants respond by arguing that plaintiffs were required to plead legal analysis demonstrating that the alleged zero-tolerance policy chills speech. (ECF No. 44 at 12.) They further contend (without citing authority) that the EEB may focus "primarily or exclusively" on the five words within an email that might be construed as a solicitation for funds. (*Id.*) This contention does not provide a basis for dismissal under Rule 12(b)(6).

Plaintiffs were required to allege facts but were not obligated "to plead specific legal theories." *Pruitt v. Cheney*, 963 F.2d 1160, 1164 (9th Cir. 1991). The Complaint satisfies that standard by describing the EEB's enforcement practice and alleging that the practice chills protected academic speech. (ECF No. 42 at 24–25, Second Amended Complaint, ¶¶ 93–96.) Whether the EEB's context-stripping approach to emails on the discussion list ultimately withstands First Amendment scrutiny presents a fact-dependent question that cannot be resolved on a Rule 12(b)(6) motion.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

### F. Defendants Also Misapprehend Plaintiffs' Eighth Amendment Excessive Fines Claim

Plaintiffs contend that the EEB's practice in setting penalties for conduct that resulted in a de minimis expense to the state contravenes the Excessive Fines clause of the Eighth Amendment. (ECF No. 42 at 26, Second Amended Complaint, ¶ 99.) Defendants acknowledge that the Eighth Amendment prohibits excessive fines (ECF No. 44 at 14) and do not challenge the sufficiency of the complaint on this claim. Instead, defendants offer factual arguments to support their Rule 12(b)(6) motion to dismiss. (ECF No. 44 at 16–17.) These fact-bound arguments cannot support dismissal on a Rule 12(b)(6) motion, which tests the sufficiency of the pleadings, rather than the weight of the evidence.

Defendants' reliance on fact-bound arguments is evident from their citation of *Pimental (II) v. City of Los Angeles*, 115 F.4th 1062 (9th Cir. 2024) for the proposition that the government may defeat an Excessive Fines claim by offering a "commonsense explanation" for the magnitude of the fine. (ECF No. 44 at 17.) In *Pimental (II)*, the Ninth Circuit used that



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

phrase in reversing the grant of summary judgment and remanding for trial because the City had "provided no evidence to explain its late fee." *Pimental (II)*, 115 F.4th at 1071.[6] That fact-bound inquiry cannot be made on a Rule 12(b)(6) motion.

### G. The Complaint Plausibly Alleges that the EEB's Refusal to Consider Constitutional Defenses Is an Actionable Claim

Although state law does not require the EEB to adjudicate constitutional defenses, Defendants themselves assert that the Board retains discretion to decline to pursue alleged misuse-of-resource violations.[7] (ECF No. 44 at 10.) Viewed in the light most favorable to plaintiffs, that acknowledged

---

[6] Defendants' reliance on *Pimentel (I)*, 974 F.3d 917 (9th Cir. 2020) is misplaced. (ECF No. 44 at 15.) There, the Ninth Circuit affirmed summary judgment that a $63 dollar parking fine was not excessive under the Eighth Amendment, *id.* at 922–25, but remanded the challenge to a late payment penalty. *Id.* at 925. The Court of Appeals identified culpability and the "nature and extent of the underlying violation" as central to the excessive fine analysis. *Id.* at 923. Here, unlike in *Pimentel*, Plaintiffs dispute their culpability and specifically allege the factual basis for their good-faith belief that their conduct was lawful. (ECF No. 13-14, 17-18, 22-23, Second Amended Complaint, ¶¶ 53–54, ¶¶ 68–69, ¶¶ 88–90.)

[7] Defendants quote only a portion of the Board's dismissal of a complaint against Dr. Flaxman. (ECF No. 44 at 10.) The full language, set out in the Second Amended Complaint, ¶ 92) states that "[a]ny violation that may have occurred does not constitute a material violation because it was inadvertent and minor, or has been cured, and, after consideration of all of the circumstances, further proceedings would not serve the purpose of this chapter." (*Id.*)



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

discretion supports the claim that the Board's failure to exercise it consistently—most notably when it imposed a $750 penalty on Plaintiff Hagopian for receiving eight allegedly non-work related emails (identified through a review of 2,964 messages) and for forwarding to the "Faculty Issues and Concerns" discussion list a posting containing five words suggesting charitable donations—has chilled speech protected by the First Amendment.

The Board's uneven exercise of its acknowledged enforcement discretion plausibly supports Plaintiffs' allegation that faculty members must steer far wider of the regulatory line than the First Amendment permits, thereby chilling protected expression.

The Court should reject Defendants' contention that eventual judicial review cures the ongoing constitutional harm from the Board's conduct. (ECF No. 44 at 14.)

First, review is not prompt. The complaint against Plaintiff Hagopian was filed on December 10, 2022, (Second Amended Complaint, ¶ 64), yet the EEB did not issue its finding until October 28, 2024. (*Id.* ¶ 76.) As the Supreme Court has repeatedly recognized, the loss of First Amendment freedoms, even



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

for minimal periods of time, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020).

Second, Defendants' reliance on *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.* 477 U.S. 619 (1986) (ECF No. 44 at 12) is misplaced. *Dayton* applied Younger abstention to a challenge directed at an ongoing state enforcement proceeding of an employment discrimination claim. *Id.* at 625-26. The respondent in that proceeding asserted that the investigation and any potential sanctions would violate the Religion Clause of the First Amendment based on its belief that "one Christian should not take another Christian into courts of the State." *Id* at 623. The Court rejected that theory, concluding that the Commission "violates no constitutional rights by merely investigating" the complaint. *Id.* at 629. The Court also rejected the respondent's argument that it could not raise constitutional arguments before the Commission, describing that contention as "an unusual doctrine" and noting that state law allows judicial review of constitutional claims "that agency action violates the United States Constitution." *Id.* Nothing in *Dayton* suggests



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

that the availability of eventual judicial review eliminates the chilling of First Amendment speech.

Defendants' reliance on the Ninth Circuit's nonprecedential decision in *Alsager v. Board of Osteopathic Medicine & Surgery*, 573 F. App'x 619 (9th Cir. 2014) is likewise misplaced. (ECF 44 at 12.) Like *Dayton*, *Alsager* addressed *Younger* abstention, an issue The Ninth Circuit has already resolved in this case. *Flaxman v. Ferguson*, 151 F.4th 1178 (9th Cir. 2025). And, again as in *Dayton*, *Alsager* did not involve First Amendment speech; the plaintiff there asserted that providing information to the Board "would violate his constitutional rights." *Id.* at 620.

The Ninth Circuit has long recognized that the loss of First Amendment freedoms, even for minimal periods of time, constitutes an irreparable injury. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (loss of First Amendment freedoms, even for minimal periods, constitutes irreparable injury). Whether, as plaintiffs allege, the Board chills protected speech by failing to exercise its discretion to consider constitutional defenses is a consistent manner cannot be properly resolved on a Rule 12(b)(6) motion.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

### III. Supplemental Jurisdiction Is Proper Under *City of Chicago v. Int'l Coll. of Surgeons*

Defendants ask the Court to decline supplemental jurisdiction over Plaintiff Hagopian's state law administrative review claim. (ECF No. 44 at 19.) This request is foreclosed by *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997).

As in *International College*, Plaintiffs' federal claims and Hagopian's state law claim "derive from a common nucleus of operative facts," 522 U.S. at 165 (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). The administrative review claim arises from the same Ethics Board proceeding that gives rise to Plaintiff Hagopian's federal constitutional claims and does not present any novel issue or complex issue of state law.

Defendants, while conceding that the Court has the power to hear the state-law claim, ask the Court to decline jurisdiction under 28 U.S.C. § 1367(c)(3). (ECF No. 44 at 17.) The Court should reject this request.

Ninth Circuit cases upholding the exercise of discretion under § 1365(c)(3) "have all involved dismissals for failure to state a claim or a grant



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

of summary judgment to the defendant on the federal claim." *Trustees of Construction Industry & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maintenance. Inc*. 333 F.3d 923, 926 (9th Cir. 2003).

The Court of Appeals applied this principle in *O'Connor v. State of Nevada*, 27 F.3d 357 (9th Cir. 1994), the primary case cited by defendants. (ECF No. 44 at 19.) There, the district court had granted summary judgment on the plaintiffs' federal claims and concluded that "the absence of a federal question barred it from ruling on whether [a state statute] violated the Nevada State Constitution."[8] *Id.* at 360.

Here, much like in *City of Chicago*, plaintiff Hagopian alleges that the Ethics Board violated her federal constitutional rights and, in the same action, brings a state law claim for review of the administrative procedure, findings, and sanctions. Because Plaintiffs' federal claims remain pending, the Court

[8] This case does not involve any question involving the Washington State Constitution.



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com

should exercise supplemental jurisdiction over the administrative review claim.[9]

## IV. CONCLUSION

For the reasons above stated, the Court should deny the motion to dismiss.

Respectfully submitted,

/s/ Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357–4218
jay@gairson.com

/s/ Kenneth N. Flaxman
knf@kenlaw.com
Joel A. Flaxman
jaf@kenlaw.com
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427–3200
(admitted pro hac vice)

*attorneys for plaintiff*

[9] Defendants again seek fees under 42 U.S.C. § 1988(b). (ECF No. 44 at 21.) The Court should likewise decline to find that Plaintiffs' action is unreasonable, frivolous, or vexatious. just as it did when rejecting the identical request in ruling on the previous motion to dismiss. (ECF No. 27 at 8.) Nothing in the decision of the Court of Appeals or in the Second Amended Complaint alters that conclusion.

I certify that this document contains 6,245 words, in compliance with the Local Civil Rules.

/s/ Kenneth N. Flaxman



Jay Gairson, WA Bar # 43365
Gairson Law, LLC
4606 Martin Luther King Jr Wy S
Seattle, Washington 98108
(206) 357-4218
jay@gairson.com