The Honorable Kymberly K. Evanson

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| ABRAHAM FLAXMAN, et al., | NO. 2:23-cv-01581-KKE |
| Plaintiffs, | DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT |
| v. | |
| NICHOLAS W. BROWN, et al., | NOTE ON MOTION CALENDAR: August 24, 2026 |
| Defendants. | Without Oral Argument |

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

      A.   The Executive Ethics Board ................................................................... 2

      B.   The Board Investigates Plaintiffs for Alleged Misuse of State Resources ............... 3

      C.   The Court Grants State Defendants' Motion to Dismiss, but the Ninth Circuit
           Reverses and Remands ........................................................................... 5

      D.   Plaintiffs Twice Amend Their Complaint ............................................... 5

III.  ARGUMENT ...................................................................................................... 6

      A.   Legal Standard ....................................................................................... 6

      B.   Plaintiffs Fail to State Any Cognizable Claim ...................................... 7

           1.   Plaintiffs fail to state a First Amendment claim ............................ 7

                a.   Count I: The faculty issues and concerns listserv is not a public
                     forum and does not give rise to a First Amendment claim ......... 7

                b.   Count II: The inability of the EEB to consider constitutional
                     challenges does not create a cognizable legal claim ................ 10

                c.   Count III: Plaintiffs cannot succeed on their First Amendment
                     retaliation claim .................................................................. 11

           2.   Count IV: Plaintiffs cannot state a facial challenge to Wash. Admin.
                Code § 292-110-010(4) ...................................................................... 13

           3.   Count V: Plaintiffs fail to state cognizable claim based on the warrantless
                searches of their state-provided emails ........................................... 16

           4.   Count VI: Plaintiff Hagopian cannot state a facial or as-applied Eighth
                Amendment claim .............................................................................. 18

           5.   Count VII: The Court should decline to exercise supplemental
                jurisdiction over Plaintiff Hagopian's state law claims ................... 21

      C.   The Court Should Dismiss with Prejudice, Except as to Dr. Hagopian's
           WAPA Claim, and Award the State Attorney Fees ............................... 23

IV.   CONCLUSION ................................................................................................. 24

## TABLE OF AUTHORITIES

### Cases

*Acri v. Varian Assocs., Inc.*,
114 F.3d 999 (9th Cir. 1997) ........................................................................................... 22

*Alsager v. Bd. of Osteopathic Med. & Surgery*,
573 F. App'x 619 (9th Cir. 2014) .................................................................................... 10

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) ........................................................................................................... 7

*Ariz. Students' Assoc. v. Ariz. Bd. of Regents*,
824 F.3d 858 (9th Cir. 2016) ........................................................................................... 12

*Asdar Grp. v. Pillsbury, Madison & Sutro*,
99 F.3d 289 (9th Cir. 1996) ............................................................................................... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 6, 13

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ............................................................................................. 6

*Bare v. Gorton*,
526 P.2d 379 (Wash. 1974) .............................................................................................. 10

*Bd. of Trustees of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989) ...................................................................................................... 7, 21

*California v. Greenwood*,
486 U.S. 35 (1988) ........................................................................................................... 16

*Capp v. County of San Diego*,
940 F.3d 1046 (9th Cir. 2019) ......................................................................................... 11

*Carr v. Saul*,
593 U.S. 83 (2021) ........................................................................................................... 10

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ........................................................................................... 23

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ......................................................................................... 23

*City of Ontario v. Quon*,
560 U.S. 746 (2010) .............................................................................................. 14, 16, 17

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) ........................................................................................... 23

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
    473 U.S. 788 (1985).................................................................................................. 8, 9

*Diamond Sands Apartments, LLC v. Clark County*,
    164 F.4th 759 (9th Cir. 2026) ......................................................................... 21

*Flaxman v. Ferguson*,
    Case No. 24-919 (9th Cir. May 31, 2024) ................................................... 23

*Flynn v. City of Santa Clara*,
    388 F. Supp. 3d 1158 (N.D. Cal. 2019) ....................................................... 12

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)........................................................................................ 15

*Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*,
    100 F.3d 1287 (7th Cir. 1996) ....................................................................... 12

*Hagopian v. Ferguson*,
    No. 2:24-cv-02057-KKE (W.D. Wash. Dec. 13, 2024) ........................................ 5

*Harrington v. Spokane County*,
    114 P.3d 1233 (2005) ..................................................................................... 22

*Hoye v. City of Oakland*,
    653 F.3d 835 (9th Cir. 2011) ........................................................................... 7

*Idaho State Univ. Fac. Ass'n for the Pres. of the First Amend. v. Idaho State Univ.*,
    857 F. Supp. 2d 1055 (D. Idaho 2012) ................................................... 10

*Katz v. United States*,
    389 U.S. 347 (1967)........................................................................................ 16

*Kenmore MHP LLC v. City of Kenmore*,
    No. 19-6014-RJB, 2019 WL 6769369 (W.D. Wash. Dec. 12, 2019)................. 21

*Knudsen v. Wash. State Exec. Ethics Bd.*,
    235 P.3d 835 (Wash. Ct. App. 2010)......................................................... 8, 20

*Nissen v. Pierce County*,
    357 P.3d 45 (Wash. 2015) ......................................................................... 14, 16

*O'Brien v. Welty*,
    818 F.3d 920 (9th Cir. 2016) ......................................................................... 11

*O'Connor v. Nevada*,
    27 F.3d 357 (9th Cir. 1994) ........................................................................... 22

*O'Connor v. Ortega*,
    480 U.S. 709 (1987)........................................................................................ 16

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

*Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*,
  477 U.S. 619 (1986) .......................................................................................................... 10

*Oliver v. Spokane Cnty. Fire Dist. 9*,
  Case No. CV-12-00176-JLQ, 2013 WL 12354006 (E.D. Wash. June 18, 2013) .................. 15

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
  460 U.S. 37 (1983) .......................................................................................................... 7, 12

*Pimentel v. City of Los Angeles*,
  115 F.4th 1062 (9th Cir. 2024) ................................................................................ 18, 19, 21

*Pimentel v. City of Los Angeles*,
  974 F.3d 917 (9th Cir. 2020) ........................................................................................ 19, 20

*Progressive Animal Welfare Soc. v. Univ. of Wash.*,
  884 P.2d 592 (Wash. 1994) ............................................................................................... 15

*Schall v. Martin*,
  467 U.S. 253 (1984) ............................................................................................................ 7

*Smith on behalf of C.M. v. Tacoma Sch. Dist.*,
  476 F. Supp. 3d 1112 (W.D. Wash. 2020) ......................................................................... 15

*Teitelbaum v. Health Care Fin. Admin.*,
  32 F. App'x 865 (9th Cir. 2002) ........................................................................................ 11

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) .......................................................................................................... 11

*Towers v. City of Chicago*,
  173 F.3d 619 (7th Cir. 1999) ............................................................................................ 20

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) .......................................................................................................... 22

*United States v. Gann*,
  732 F.2d 714 (9th Cir. 1984) ....................................................................................... 15, 18

*United States v. Grace*,
  461 U.S. 171 (1983) ............................................................................................................ 8

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .......................................................................................... 4, 7

*United States v. Salerno*,
  481 U.S. 739 (1987) ............................................................................................................ 7

*Univ. of Pa. v. E.E.O.C.*,
  493 U.S. 182 (1990) .......................................................................................................... 15

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

*Vasudeva v. United States*,
214 F.3d 1155 (9th Cir. 2000) ................................................................................... 20

*Vernon v. City of Los Angeles*,
27 F.3d 1385 (9th Cir. 1994) ..................................................................................... 24

*Vernonia Sch. Dist. 47J v. Acton*,
515 U.S. 646 (1995) .................................................................................................. 18

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) .................................................................................................... 7

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ................................................................................... 13

## Statutes

28 U.S.C. § 1367(a) ........................................................................................................ 21

28 U.S.C. § 1367(c) ........................................................................................................ 21

28 U.S.C. § 1367(c)(1) .............................................................................................. 21, 22

28 U.S.C. § 1367(c)(3) .............................................................................................. 21, 22

42 U.S.C. § 1988(b) ........................................................................................................ 24

Wash. Rev. Code 34.05 ..................................................................................................... 3

Wash. Rev. Code § 34.05.514 ........................................................................................... 3

Wash. Rev. Code 42.52 ..................................................................................................... 1

Wash. Rev. Code § 42.52.160 ........................................................................................... 9

Wash. Rev. Code § 42.52.160(4) ...................................................................................... 2

Wash. Rev. Code § 42.52.360 ........................................................................................... 2

Wash. Rev. Code § 42.52.390 ........................................................................................... 2

Wash. Rev. Code § 42.52.410(1) ...................................................................................... 2

Wash. Rev. Code § 42.52.420 ........................................................................................... 2

Wash. Rev. Code § 42.52.420(4) ...................................................................................... 2

Wash. Rev. Code § 42.52.430 ........................................................................................... 2

Wash. Rev. Code § 42.52.440 ........................................................................................... 3

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Wash. Rev. Code § 42.52.480(1)(a) .................................................................................... 19

Wash. Rev. Code § 42.52.480(1)(b) .............................................................................. 19, 20

Wash. Rev. Code § 42.52.480(1)(c) .................................................................................... 19

Wash. Rev. Code § 42.52.900 ....................................................................................... 1, 9, 20

Wash. Rev. Code § 42.52.901 ............................................................................................... 2

Wash. Rev. Code § 42.56.010(3) .......................................................................................... 14

## Regulations

Wash. Admin. Code § 292-100-030 ........................................................................................ 2

Wash. Admin. Code § 292-100-090 ........................................................................................ 2

Wash. Admin. Code § 292-110-010(3)(a) .............................................................................. 2

Wash. Admin. Code § 292-110-010(4) ................................................................................... 14

Wash. Admin. Code § 292-120-020 ...................................................................................... 19

Wash. Admin. Code § 292-120-030(1) .................................................................................. 19

Wash. Admin. Code § 292-120-030(2) .................................................................................. 19

Wash. Admin. Code § 292-120-030(2)(a) ............................................................................. 19

Wash. Admin. Code § 292-120-030(3) .................................................................................. 19

Wash. Admin. Code § 292-120-030(4) .................................................................................. 19

Wash. Admin. Code § 292-120-030(5) .................................................................................. 19

## Rules

Fed. R. Civ. P. 15(a) ............................................................................................................ 23

## Other Authorities

Black's Law Dictionary (12th ed. 2024) ............................................................................... 14

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

# I.   INTRODUCTION

Like all other state employees, University of Washington professors are subject to the Ethics in Public Service Act, Wash. Rev. Code 42.52 (1994). In Washington, state employees' ethical obligations are fundamental to preserving trust in a government that derives its power directly from the people. As our Legislature has declared, state employees "hold a public trust that obligates them, in a special way, to honesty and integrity in fulfilling the responsibilities to which they are . . . appointed. Paramount in that trust is the principle that public office . . . may not be used for personal gain or private advantage." Wash. Rev. Code § 42.52.900. The Ethics in Public Service Act holds all state employees to the same high standards.

Here, the named Plaintiffs are two UW professors who were previously subject to investigations under the Ethics in Public Service Act for allegedly using their state-issued email accounts for private gain, and who object to the Act's application to them. But Plaintiffs' Third Amended Complaint (Complaint) still fails to state a plausible facial or as-applied claim upon which relief can be granted, and it should be dismissed. First, Plaintiffs' Complaint proceeds from the mistaken assumption that their State-provided email addresses and the State-run listserv at issue here are public fora protected by the First Amendment. But these state-owned resources, provided to employees, are not public. Their other skeletal First Amendment claims likewise fail as a matter of law because they proceed from the mistaken premise that Plaintiffs were investigated and sanctioned because they engaged in protected activity. Second, Plaintiffs' lack a cognizable privacy interest in their state-provided email addresses, dooming their Fourth Amendment claims. Third, Plaintiff Hagopian cannot make out an Eighth Amendment Excessive Fines Clause claim where Washington law serves the important goal of ensuring ethical behavior by state employees. Fourth, the Court should decline to exercise supplemental jurisdiction over Plaintiff Hagopian's appeal of the Executive Ethics Board's decision under the Washington Administrative Procedure Act.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Accordingly, the Court should grant Defendants' motion to dismiss, dismiss all claims except Dr. Hagopian's state law claim with prejudice, and award Defendants their fees and costs.

## II.    BACKGROUND

### A.    The Executive Ethics Board

The Executive Ethics Board (EEB or Board) is responsible for enforcing the Ethics in Public Service Act with respect to "institutions of higher education" and "higher education faculty." Wash. Rev. Code § 42.52.360. Among other things, the Act prohibits the use of state resources for private benefit, unless that use was de minimis. Wash. Rev. Code § 42.52.160(4); Wash. Admin. Code § 292-110-010(3)(a); Wash. Rev. Code § 42.52.901 (providing that the Ethics in Public Service Act shall be "construed liberally to effectuate its purposes and policy").

Any person may file a complaint with the Board. Wash. Rev. Code § 42.52.410(1). Complaints may be submitted anonymously. Wash. Admin. Code § 292-100-030; *see also* Wash. Rev. Code § 42.52.420(4) (the identity of a person filing an ethics complaint is exempt from public disclosure). When the Board receives a complaint alleging an ethical violation, the Board conducts an investigation to determine whether there is "reasonable cause" to believe a violation has occurred. Wash. Rev. Code § 42.52.420 (providing that the Board may request investigation assistance from the Office of the Attorney General or an investigator, and that results of an investigation shall be reduced to writing and provided to the complainant and person named in the complaint). In addition to its authority to investigate complaints, the Board may issue subpoenas to obtain information, testimony, or documents relating to a matter under investigation. Wash. Rev. Code § 42.52.390. If the Board determines there is "reasonable cause," the Board must hold a hearing or resolve the matter through settlement. Wash. Rev. Code § 42.52.430; Wash. Admin. Code § 292-100-090. If the Board finds by a preponderance of the evidence that a violation occurred, it must issue an order stating its findings of fact and any enforcement action it is taking. Wash. Rev. Code § 42.52.430.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Washington's Administrative Procedure Act (WAPA), Wash. Rev. Code 34.05 (1988) applies to any order by the Board concluding that an ethics violation has occurred. *See* Wash. Rev. Code § 42.52.440 (citing Wash. Rev. Code 34.05). Pursuant to the WAPA, individuals sanctioned by the Board may seek judicial review in state court, where they may raise any constitutional or other challenges to the validity of the Board's order or the proceedings. *See id.*; Wash. Rev. Code § 34.05.514 (providing that proceedings for review under WAPA shall be filed in superior court).

**B.    The Board Investigates Plaintiffs for Alleged Misuse of State Resources**

The named Plaintiffs are two UW professors who moderate a "Faculty Issues and Concerns" listserv. Dkt. No. 51 ¶¶ 1–2, 13. Plaintiffs' claims arise out of three separate investigations by the Board into their alleged misuse of state resources in connection with the listserv.

*Dr. Flaxman.* Dr. Flaxman was investigated in 2022 and 2023 after the Board received anonymous complaints about his use of his state-provided email. *Id.* ¶¶ 49–63, 84–92. The 2022 Complaint involved an email Dr. Flaxman sent to the faulty listserv related to a campaign in support of universal healthcare in Washington State from his state-provided email to the faculty listserv. *Id.* ¶ 51. Based on its 2022 investigation, the Board concluded there was reasonable cause to believe Dr. Flaxman had violated the Ethics in Public Service Act, but the Board ultimately dismissed the Complaint. *Id.* ¶¶ 62–63.

The 2023 Complaint involved an email Dr. Flaxman sent to the faculty listserv related to a potential strike of research scientists and postdoctoral scholars. *Id.* ¶¶ 86–88. After an investigation, the Board concluded that any violation was "inadvertent and minor," and so declined to pursue further proceedings. *Id.* ¶ 92.

*Dr. Hagopian.* Dr. Hagopian was investigated in 2022 after the Board received an anonymous complaint that Dr. Hagopian used her state-issued email to forward an email about a University of California strike, which solicited donations for the striking workers, to the faculty

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

listserv. *Id.* ¶¶ 64–83. After an investigation, the Board concluded there was reasonable cause to believe Dr. Hagopian had violated the Ethics in Public Service Act based on the University of California email, as well as number of personal emails Dr. Hagopian received to her state-issued email. *Id.* ¶¶ 77–78.

The Board held a hearing and determined Dr. Hagopian had violated the Ethics in Public Service Act by using her state-provided email to solicit donations for striking UC workers. *Id.* ¶¶ 77, 79. In reaching its decision, the Board concluded that the email for the strike organization "specifically mentioned donating to the organization and provided a link to do so," and thereby "promoted the interests of, supported, and solicited on behalf of the strike organization" in violation of the Act. Dkt. No. 45-1 ¶ 3.7 (Final Order).[1]

Additionally, the Board concluded that Dr. Hagopian had violated the Ethics in Public Service Act by receiving hundreds of emails to her state-provided email not related to her work as a state employee. *Id.* ¶¶ 2.6, 3.5–3.7 (concluding Dr. Hagopian had violated the Act by using her state-provided email to receive communications from Democratic political organizations, eBay, Netflix, a bank, airlines, hotels, various retailers, and other non-work-related contacts). The Board concluded that "[b]ecause such use does not meet each of the criteria" for the de minimis use exception, "Dr. Hagopian's use of their UW email cannot be considered de minimis, acceptable personal use." *Id.* ¶ 3.7. The Board imposed a $750 penalty for Dr. Hagopian's misuse of her state email. *Id.* ¶¶ 3.8–3.9; Dkt. No. 51 ¶ 76. Dr. Hagopian did not appeal this decision to the superior court. Dkt. No. 51 ¶¶ 81, 83.

---

[1] The Court may take judicial notice of the Board's Final Order because it is incorporated by reference in Plaintiffs' Complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted) (a document is incorporated by reference if the complaint refers to extensively or if the document forms the basis of the plaintiff's claims); *see also Asdar Grp. v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n.1 (9th Cir. 1996) (holding that the court may take judicial notice of court orders in earlier related proceedings).

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

4

**C.      The Court Grants State Defendants' Motion to Dismiss, but the Ninth Circuit Reverses and Remands**

Plaintiffs originally filed this case in October 2023. Dkt. No. 1. After the State Defendants moved to dismiss, Plaintiffs filed an Amended Complaint that did not address any of the shortcomings identified by State Defendants in their motion. Dkt. No. 15. The Court then dismissed on ripeness and *Younger* abstention grounds. Dkt. No. 27. In ruling on the State Defendants' earlier motion, Dkt. No. 19, the Court did not reach the State Defendants' alternative arguments that Plaintiffs had failed to state a claim upon which relief could be granted. Dkt. No. 27 at 8.

Plaintiffs appealed this Court's Dismissal Order to the Ninth Circuit Court of Appeals. Dkt. No. 28. Meanwhile, Dr. Hagopian filed a separate action challenging the Board's Final Order against her, which was stayed for the duration of the appeal. *Hagopian v. Ferguson*, No. 2:24-cv-02057-KKE (W.D. Wash. Dec. 13, 2024). In a 2–1 opinion, the Ninth Circuit reversed and remanded, finding that Plaintiffs' claims were ripe and were not barred by *Younger* abstention. *See generally* Dkt. No. 31.

**D.      Plaintiffs Twice Amend Their Complaint**

Plaintiffs filed their Second Amended Complaint, consolidating Plaintiffs' two cases and requesting unspecified injunctive and declaratory relief related to the Board's practices and procedures for investigating and sanctioning alleged misuse of state resources. Dkt. No. 42 at 28–29. Plaintiffs broadly alleged that the Board's policies and procedures violate the First, Fourth, and Eighth Amendments of the U.S. Constitution. *Id.* ¶¶ 93–107. Dr. Hagopian further requested the Court exercise supplemental jurisdiction and review the Board's order under the WAPA and set aside the $750 penalty imposed on her. *Id.* ¶¶ 83, 113. Defendants moved to dismiss the Second Amended Complaint for failure to comply with Rule 8 and Rule 12. Dkt. No. 44. The Court granted the motion on Rule 8 grounds and gave Plaintiffs "a final opportunity to clarify their claims." Dkt. No. 50 at 8.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Plaintiffs' Third Amended Complaint (Complaint) contains nearly identical factual allegations as the prior complaint. *See* Dkt. No. 51 ¶¶ 1–92. However, the Complaint details seven claims that challenge various Board actions and regulations, both as-applied to Plaintiffs and facially. Plaintiffs allege that: (1) the Board's enforcement of the Ethics in Public Service Act's prohibition on the use of state resources for private gain in a public forum violates the First Amendment as-applied to them, *id.* ¶¶ 95–99; (2) the Board's inability to consider constitutional defenses violates the First Amendment facially and as applied to them, *id.* ¶¶ 101–07; (3) that the Board retaliated against Plaintiffs in violation of the First Amendment, *id.* ¶¶ 109–13; (4) that Wash. Admin. Code § 292-110-010(4) is facially invalid under the First and Fourth Amendments, *id.* ¶¶ 115–17; and (5) the warrantless search of Plaintiffs' state-provided inboxes violates the Fourth Amendment, *id.* ¶¶ 119–21. Dr. Hagopian alleges two additional claims: (1) that the fine imposed on her for violating the Ethics in Public Service Act violates the Eighth Amendment Excessive Fines Clause facially and as-applied to her, *id.* ¶¶ 123–26; and (2) a supplemental state-law claim under the WAPA seeking review of the Board's final order, raising largely the same claims as those here, *id.* ¶¶ 128–29. Plaintiffs seek declaratory and injunctive relief.

### III.    ARGUMENT

#### A.    Legal Standard

On a Rule 12(b)(6) motion to dismiss, courts accept as true all factual allegations in the Complaint but are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint may be dismissed under Rule 12(b)(6) for lack of a cognizable legal theory or the absence of sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In ruling on a Rule 12(b)(6) motion, the Court may consider the pleadings, documents incorporated by

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

reference into the complaint, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

Facial challenges are disfavored. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008). A plaintiff cannot succeed on a facial challenge unless he "establish[es] that no set of circumstances exist[] under which the [law] would be valid," or he shows that the law lacks a "plainly legitimate sweep." *Id.*; *see also United States v. Salerno*, 481 U.S. 739, 745 (1987). For First Amendment claims specifically, a plaintiff must show that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021). Thus, a facial challenge fails where "at least some" constitutional applications exist. *Schall v. Martin*, 467 U.S. 253, 264 (1984). By contrast, an as-applied attack challenges "the application of the statute to a specific factual circumstance." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). When presented with simultaneous facial and as-applied challenges, courts should first resolve the as-applied challenge before addressing the facial challenge to avoid unnecessarily considering a facial challenge. *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989).

**B.      Plaintiffs Fail to State Any Cognizable Claim**

**1.      Plaintiffs fail to state a First Amendment claim**

Plaintiffs' First Amendment claims (Counts I, II, and III) are fundamentally flawed. The Court should dismiss each Count with prejudice for failure to state a claim.

**a.      Count I: The faculty issues and concerns listserv is not a public forum and does not give rise to a First Amendment claim**

Count I fails to state a cognizable claim because Plaintiffs misunderstand their university-provided emails and the university-run listserv as public fora.

The Constitution allows the regulation of protected speech in certain circumstances. *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45–46 (1983). For example, in

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

a *public* forum, speech may be subject to time, place, and manner restrictions that are "content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *United States v. Grace*, 461 U.S. 171, 177 (1983). By contrast, in a *nonpublic* forum, speech may be restricted if "the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (citation omitted). And "the Government, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *Grace*, 461 U.S. at 177-78; *Int'l. Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) (a nonpublic forum exists "[w]here the government is acting as a proprietor, managing its internal operations, rather than acting as lawmaker with the power to regulate or license"); *Cornelius*, 473 U.S. at 810 ("the Government need not wait until havoc is wreaked to restrict access to a nonpublic forum.").

*Knudsen v. Washington State Executive Ethics Board*, 235 P.3d 835 (Wash. Ct. App. 2010), is directly on point. There, a part-time community college professor used her state-issued email address, as well as a college computer, to email other faculty members to advocate in favor of a proposed law related to part-time state employees. The Washington Court of Appeals upheld the Board's conclusion that the professor violated the Ethics in Public Service Act. *Id.* at 840. In relevant part, the Court of Appeals rejected the professor's argument that the school's email system was a public forum protected by the First Amendment. The Court held that the email system was a "nonpublic forum" that "exist[ed] to facilitate communications for purposes of state business." *Id.* at 842. Thus, the court held that the Board's application of Wash. Rev. Code § 42.52.160's prohibition against state resources for private gain was reasonable, viewpoint neutral, and entirely permissible under the First Amendment. *Id.*

So too here. Plaintiffs' Complaint alleges that various Board practices are unlawful based on the mistaken assumption that Plaintiffs' state-issued email addresses and the

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

university-hosted listserv constitute public fora that cannot be lawfully regulated. *See* Dkt. No. 51 ¶¶ 10, 14, 15, 91. But, just as in *Knudsen*, Plaintiffs' state-issued email addresses and the university listserv are not public fora. Simply put, the State does not hold these resources open to the public but provides them for State employees to do their jobs.

Indeed, Plaintiffs' Complaint undermines any assertion that the UW listserv is a public forum. For example, Plaintiffs allege that they are "co-moderators" of the listserv, *id.* ¶ 3, and that they must approve every post before it can be sent to subscribers, *id.* ¶ 12. Plaintiffs also allege that they moderate posts to "guard[] against personal attacks or rude remarks," to "minimiz[e] back and forth exchanges," and ensure that subscribers' inboxes are not "overwhelmed with messages or personal attacks." *Id.* ¶¶ 14, 16. These requirements are inconsistent with the notion that the listserv is a public forum. *See Cornelius*, 473 U.S. at 811 ("a nonpublic forum by definition is not dedicated to general debate or the free exchange of ideas.").

Plaintiffs' other grab-bag of First Amendment arguments appended to Claim I also fail. For example, Plaintiffs allege that the Board's "refusal to consider the forwarded message as a whole is a content-based restriction on speech in a public forum that is not narrowly tailored to serve any compelling state interest." But Plaintiffs own allegations show the EEB *does* consider the entire context of a message, as they specifically allege that a complaint against Dr. Flaxman was dismissed as "inadvertent and minor[.]" Dkt. No. 51 ¶ 92. In any event, it makes sense that an enforcement body would focus on the portions of an email or action that violates the law.

Thus, as nonpublic fora, the State's reasonable, viewpoint neutral prohibitions against use of those resources for private gain, *see, e.g.*, Wash. Rev. Code § 42.52.160, comfortably meet the requirements for such restrictions under the First Amendment. *See also* Wash. Rev. Code § 42.52.900 ("Only when affairs of government are conducted . . . [with] an unswerving commitment to the public good does government work as it should."); *cf. Idaho State Univ. Fac. Ass'n for the Pres. of the First Amend. v. Idaho State Univ.*, 857 F. Supp. 2d 1055, 1058 (D.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Idaho 2012) (holding in the context of a university email listserv that, where the plaintiff professors' speech was "job related" and the university had "control" of the listserv in question, that "basically ends the analysis" under *Pickering v. Board of Education*, 391 U.S. 563 (1968)).

The Court should therefore dismiss Count I with prejudice.

### b.    Count II: The inability of the EEB to consider constitutional challenges does not create a cognizable legal claim

Plaintiffs also challenge the fact that the Executive Ethics Board is unable to consider constitutional challenges to state law or the Board's conduct. They contend this violates the First Amendment. But they fail state a cognizable facial or as-applied claim.

Plaintiffs are correct that they may not raise their constitutional challenges directly before the Board. *Bare v. Gorton*, 526 P.2d 379, 380–81 (Wash. 1974). However, in the related context of *Younger* abstention, courts have repeatedly held that "it is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 629 (1986); *Alsager v. Bd. of Osteopathic Med. & Surgery*, 573 F. App'x 619, 621 (9th Cir. 2014) (rejecting challenge to professional sanctions because disciplinary proceedings provided adequate opportunity to raise constitutional claims in state court). This straightforward principle plainly applies here to bar this claim. Perhaps anticipating this argument, Plaintiffs argue that *Younger* abstention does not apply here. Dkt. No. 51 ¶ 103. But Defendants don't argue that it does. Instead, these cases demonstrate that a requirement that claims be litigated before a state court, rather than before the enforcing agency, does not create a constitutional problem. And this makes sense, because "[a]n administrative body does not have authority to determine the constitutionality of the law it administers; only the courts have that power." *See Bare*, 526 P.2d at 383; *see also Carr v. Saul*, 593 U.S. 83, 92 (2021) ("[A]gency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise."). Courts have applied this principle outside of the *Younger* context to reject due

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

process challenges to administrative proceedings too. *See, e.g.*, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994) (preclusion of pre-enforcement judicial review is appropriate where there is an opportunity for meaningful review of claims after the administrative process); *Teitelbaum v. Health Care Fin. Admin.*, 32 F. App'x 865, 866 (9th Cir. 2002) (holding administrative proceedings did not deprive plaintiff of meaningful judicial review). Finally, to the extent Plaintiffs complain that the Board and state court process is too slow and would harm their constitutional rights, Dkt. No. 51 ¶ 104, this is belied by the fact that Plaintiffs have never sought a temporary restraining order or preliminary injunction in this matter.

Thus, the Court should dismiss Count II with prejudice.

### c.   Count III: Plaintiffs cannot succeed on their First Amendment retaliation claim

Plaintiffs allege that the EEB retaliated against them for the content of the messages shared on the faculty listserv in violation of the First Amendment. *Id.* ¶ 112. This claim also fails as a matter of law.

Ther are three elements to a First Amendment retaliation claim: (1) that the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). To ultimately prevail on such a claim, a plaintiff "must show that the defendant's retaliatory animus was a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Capp v. County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019)). Plaintiffs' First Amendment retaliation claim fails for several reasons.

First, as a threshold matter, Plaintiffs' First Amendment retaliation claim fails because they were not investigated and, in Dr. Hagopian's case, disciplined, because of constitutionally

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

protected activity. The fact that all the offending conduct took place in a nonpublic forum—the University-provided Faculty Issues listserv—is dispositive here. *Flynn v. City of Santa Clara*, 388 F. Supp. 3d 1158, 1165–66 (N.D. Cal. 2019) (stating that whether particular speech and conduct is protected and to what extent, turns on whether the forum "was, at the relevant time, a designated public forum, a limited public forum, or a nonpublic forum" and holding that football stadium was not a designated public forum); *Perry Educ. Ass'n*, 460 U.S. at 46–49 (in a nonpublic forum, the government has "the right to make distinctions in access on the basis of subject matter and speaker identity," as long as the distinctions are not "an effort to suppress expression merely because public officials oppose the speaker's view"); *see also Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1295–96 (7th Cir. 1996) (noting that "retaliation claims protect constitutional rights against their *unequal* infringement," not against "government rules that affect both majority and minority alike"). As discussed at length above, the listserv at issue here is a nonpublic forum, operated by UW to allow faculty to do their jobs as state employees, and the regulations imposed by the Ethics in Public Service Act are viewpoint neutral and reasonable. Section III.B.1.a, *supra*. Because Plaintiffs cannot show that they were engaged in protected activity, their retaliation claims fail out the gate.

The nonpublic nature of the Faculty Issues listserv should begin—and end—the inquiry. But Plaintiffs' retaliation claim fails for the additional reason that they do not plausibly allege that "there was a nexus between [Defendants'] actions and an intent to chill speech." *Ariz. Students' Assoc. v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). Indeed, Plaintiffs acknowledge that the EEB investigated them (and disciplined Dr. Hagopian) because of complaints that Plaintiffs' respective use of their state-provided emails could be perceived as the use of state resources for private benefit. *See* Dkt. No. 51 ¶¶ 77–79, 88–89. Plaintiffs offer no non-conclusory allegations that the content of their speech motivated Defendants in any way— let alone in a substantial way. Given these allegations, Plaintiffs cannot plausibly allege that Plaintiffs' protected speech was a substantial or motivating factor in the Board's investigation

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

or discipline of them. *Iqbal*, 556 U.S. at 682 (an allegation is not plausible if there is an "obvious alternative explanation" for alleged misconduct).

Finally, to the extent Plaintiffs assert that mere investigations into the use of state resources violated their rights, they are wrong. *White v. Lee* is illustrative. 227 F.3d 1214 (9th Cir. 2000). There, plaintiffs who opposed the conversion of a motel into multi-family housing were investigated for allegedly violating the Fair Housing Act. The Ninth Circuit ultimately concluded that the "scope and manner" of the investigation violated the plaintiffs' First Amendment rights because it "far exceeded what was reasonable for the purpose of ascertaining the plaintiffs' motives for filing the state-court suit and thus intruded unnecessarily on their First Amendment rights[.]" *Id.* at 1237–38; *see also Dousa v. U.S. Dep't of Homeland Sec.*, 662 F. Supp. 3d 1123, 1150 (S.D. Cal. 2023) (granting pastor's motion for summary judgment on claim that pastor's ministry work and speech on immigration law was a substantial factor in defendant's decision to ask Mexican government to deny him entry to Mexico or to detain him at the border). By contrast, here, Defendants' investigation was limited to ensuring Plaintiffs' respective compliance with the Ethics in Public Service Act and was limited to only a few months' worth of emails. *See* Dkt. No. 51 ¶ 61 (three months of Dr. Flaxman's emails reviewed), ¶ 73 (five months of Dr. Hagopian's emails reviewed). The limited scope and manner of the EEB's investigation into Plaintiffs' use of state resources does not come close to violating their First Amendment rights.

Accordingly, Plaintiffs cannot state a First Amendment retaliation claim as a matter of law, and the Court should dismiss Count III with prejudice.

### 2. Count IV: Plaintiffs cannot state a facial challenge to Wash. Admin. Code § 292-110-010(4)

Plaintiffs also allege they possess a constitutionally protected privacy interest in their state-issued email accounts under the First and Fourth Amendments and so challenge Wash. Admin. Code § 292-110-010(4). Dkt. No. 51 ¶¶ 35–43, 115–17. Wash. Admin. Code

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

§ 292-110-010(4) provides that "[e]lectronic records are reproducible and therefore cannot be considered private. Such records may be subject to disclosure under the Public Records Act[.]" Contrary to Plaintiffs' mistaken belief, this regulation poses no constitutional problem under either the First or Fourth Amendments. The Court should dismiss Count IV.

Plaintiffs contend that their state-provided inboxes are a "bailment" of "papers and effects" that renders Wash. Admin. Code § 292-110-010(4) unconstitutional. Dkt. No. 51 ¶¶ 116, 119 ("Email held on a mail server owned by a state university is a bailment of "papers and effects" in which the owner retains a vital and protected legal interest."). A "bailment" exists upon "[a] delivery of *personal* property by one person (the *bailor*) to another (the *bailee*) who holds the property for a certain purpose[.]" Black's Law Dictionary (12th ed. 2024) (emphasis added). But as a matter of state law not challenged here, records created by state employees are the property of the State, not the individual employee who creates the record. Wash. Rev. Code § 42.56.010(3) (defining a "public record" to include "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or *retained* by any state or local agency regardless of physical form or characteristics.") (emphasis added). The Washington Supreme Court has already weighed in. *Nissen v. Pierce County*, 357 P.3d 45, 52–53 (Wash. 2015) (quoting Wash. Rev. Code § 42.56.010(3) (noting common-law concept that employers act exclusively through their employees in holding that "a record that an agency employee prepares, owns, uses, or retains in the scope of employment is necessarily a record 'prepared, owned, used, or retained by [a] state or local agency.'"). Plaintiffs cannot show a reasonable privacy interest in their state-provided emails, because the contents of the inboxes are indisputably public records, not private property. *Id.* at 56 ("an individual has no constitutional privacy interest in a *public* record") *City of Ontario v. Quon*, 560 U.S. 746, 758 (2010) ("compliance with state open records laws . . . bear[s] on the legitimacy of a[] [public] employee's privacy expectation").

Plaintiffs lack a reasonable expectation of privacy regardless of any claims of academic freedom. Again, the public nature of the records here is dispositive. *Progressive Animal Welfare Soc. v. Univ. of Wash.*, 884 P.2d 592, 604 (Wash. 1994) (rejecting university's argument that unfunded grant proposal that included a "researcher's preliminary ideas" was exempt from disclosure under the Public Records Act (PRA) because the PRA lacked carveouts for academics employed by the State). Indeed, many conversations in which a person may have an expectation of privacy if conducted in private lose that protection if they occur in public. *Cf. United States v. Gann*, 732 F.2d 714, 723 (9th Cir. 1984) (holding defendant lacked a Sixth or Fourth Amendment expectation of privacy in conversation with attorney where he "knew, or should have known" that police executing search warrant of home could overhear his conversation with attorney); *Oliver v. Spokane Cnty. Fire Dist. 9*, Case No. CV-12-00176-JLQ, 2013 WL 12354006, at *3 (E.D. Wash. June 18, 2013) (dismissing Washington Privacy Act claim, where Act did not apply to non-private conversations in public places and plaintiff alleged that violation occurred at work with other employees) (citing *Johnson v. W.J. Hawe*, 388 F.3d 676, 682 (9th Cir. 2004)). Plaintiffs cannot invoke academic freedom to circumvent this obvious conclusion.

But, in any event, courts recognize that academic freedom is concerned with governments attempting to control or direct the content of the speech engaged in by a university or those affiliated with it, not with generally applicable, content-neutral statutes. *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 201 (1990) (holding that agency subpoena process did not infringe on any First Amendment right of academic freedom, where agency requested documents from tenure process in resolving discrimination claim by faculty member). Academic freedom does not shield state employees from generally applicable ethics laws.[2]

---

[2] Nor does the Family Educational Rights and Privacy Act (FERPA) provide Plaintiffs a foothold here. *Contra* Dkt. No. 51 ¶ 40. Setting aside the fact that Plaintiffs' reference to private student information's possible existence in their emails is entirely speculative, FERPA protects students, not faculty, and does not provide any private right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287–89 (2002); *see also Smith on behalf of C.M. v. Tacoma Sch. Dist.*, 476 F. Supp. 3d 1112, 1136 (W.D. Wash. 2020) (citing *Gonzaga* and concluding plaintiff "has no private right of action to remedy an alleged FERPA violation.").

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Accordingly, Plaintiffs lack a cognizable privacy interest in their state-issued email accounts that would justify striking down Wash. Admin. Code § 292-110-010(4) as unconstitutional in every application. The Court should dismiss Claim IV with prejudice.

### 3.    Count V: Plaintiffs fail to state cognizable claim based on the warrantless searches of their state-provided emails

The Court should also dismiss Claim V, which challenges the search of Plaintiffs' state-provided inboxes. Dkt. No. 51 ¶¶ 119–21. The Fourth Amendment simply does not apply to the state-issued email accounts at issue here because Plaintiffs lack a privacy interest in them.

First, as discussed above, Plaintiffs have no expectation of privacy in their state-issued email addresses. Emails sent to and from their state-issued emails are, by definition, not private because they are public records. *Nissen*, 357 P.3d at 56 (holding that, whether phrased as arising under the right to free association or the right to be free from unreasonable search and seizure, "an individual has no constitutional privacy interest in a *public* record"); *California v. Greenwood*, 486 U.S. 35, 40 (1988) (holding that a person lacks a reasonable expectation of privacy in property accessible to the public); *Katz v. United States*, 389 U.S. 347, 351 (1967) ("[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

Second, any privacy expectation is further dampened by the workplace context presented by Plaintiffs' claims. When conducted for a "noninvestigatory, work-related purpose[]" or for the "investigation[] of work-related misconduct," a government employer's warrantless search is reasonable if it is "justified at its inception" and if "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of'" the circumstances giving rise to the search. *O'Connor v. Ortega*, 480 U.S. 709, 725–26 (1987).

*City of Ontario v. Quon*, 560 U.S. 746 (2010) is illustrative. There, a city police officer brought a Section 1983 action alleging that his employer's review of text messages—sent from a department-provided pager—to ensure compliance with city policy regarding the use of text

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

messaging violated the Fourth Amendment. The messages were reviewed pursuant to a policy that provided that users of city-owned devices had no expectation of privacy or confidentiality when using the resources and that limited the use of city resources to work-related purposes. *Id.* at 751. Applying *O'Connor*, the Court concluded that even if the officer had a reasonable expectation of privacy in his messages, his Fourth Amendment rights were not necessarily violated by his employer obtaining and reviewing the messages. *Id.* at 760. The Court reasoned that "it would not have been reasonable for [the plaintiff] to conclude that his messages were in all circumstances immune from scrutiny" and that he "should have known that his actions were likely to come under scrutiny, and that this might entail an analysis of his on-the-job communications." *Id.* at 762. The Court also noted the department's search was relatively limited in scope—only seeking two months of messages when the officer had violated the policy multiple times—and was intended only to ensure compliance with department policy, rather than to investigate a crime. *Id.* at 761–62.

So too here. Plaintiffs' state-provided inboxes were searched to ensure compliance with state ethics rules after Defendants received complaints about the misuse of state resources and so were justified at the time of the searches. As state employees, Plaintiffs knew or should have known that their conduct could come under scrutiny and might be disclosed—whether pursuant to the PRA or the Ethics in Public Service Act. *See id.* at 762 ("Under the circumstances, a reasonable employee would be aware that sound management principles might require the audit of messages to determine whether the pager was being appropriately used."). And, as discussed above, the scope of the search was limited to ensuring Plaintiffs' respective compliance with the Ethics in Public Service Act and was limited to only a few months' worth of emails. To the extent Plaintiffs try to assert that the searches should have been limited to the offending emails flagged in complaints, Dkt. No. 51 ¶ 120, courts have "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment."

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

*Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 663 (1995); *cf. Gann*, 732 F.2d at 723 (holding that officer was not required "to deafen himself" to evidence while lawfully engaged in a search).

Accordingly, Plaintiffs fail to state a Fourth Amendment claim based on the warrantless searches of their State-provided inboxes, and the Court should dismiss Claim V with prejudice.

### 4.    Count VI: Plaintiff Hagopian cannot state a facial or as-applied Eighth Amendment claim

Dr. Hagopian also fails to state a claim that the Board's authority to impose fines for violations of the Ethics in Public Service Act violates the Eighth Amendment's Excessive Fines Clause, either facially or as applied to her.

The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Pimentel v. City of Los Angeles*, 115 F.4th 1062, 1067 (9th Cir. 2024) (*Pimentel II*). Only punitive fines fall within the Clause's scope. A fine violates the Eighth Amendment if its amount "is grossly disproportional to the gravity of the defendant's offense." *Id.* (quoting *United States v. Bajakajian*, 524 U.S. 321, 337 (1998)). "The four factors for analyzing gross disproportionality are: (1) the nature and extent of the underlying offense; (2) whether the underlying offense is related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Id.* Courts do not "mandate the consideration of any rigid set of factors." *Id.* Instead, a "common thread" in Excessive Fines Clause jurisprudence is that the "analysis must be tethered to the nature and extent of the harm suffered by the government." *Id.* "So long as a government provides an unrebutted commonsense explanation . . . to justify its fine, it will likely prevail against an Excessive Fines Clause challenge." *Id.* at 1069.

Under Washington law, the Board may, upon the finding of a violation of the Ethics in Public Service Act, order payment of actual damages; a civil penalty of up to $5,000 per violation or three times the economic value of any thing received or sought in violation of the law, whichever is greater; and its costs, not to exceed any penalty imposed.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Wash. Rev. Code § 42.52.480(1)(a)–(c); *see also* Wash. Admin. Code § 292-120-020. In determining an appropriate sanction, including the amount of a civil penalty, the Board may consider the nature of the violation and the extent, magnitude, or severity of the violation. Wash. Admin. Code § 292-120-030(1)–(4). For purposes of imposing and calculating penalties, each act that violates the law may constitute a separate violation. Wash. Admin. Code § 292-120-030(5).

The $750 penalty imposed on Dr. Hagopian easily clears Eighth Amendment scrutiny.[3]

*First*, the nature and extent of Dr. Hagopian's violation of the Ethics in Public Service Act supports the fine. In analyzing this factor, courts typically look to the violator's culpability. *Pimentel v. City of Los Angeles*, 974 F.3d 917, 923 (9th Cir. 2020) (*Pimentel I*) ("It is critical . . . that the court review the specific actions of the violator rather than by taking an abstract view of the violation."). Here, the Board concluded that Dr. Hagopian received high volumes of personal emails to her state-issued email address, and that the volume of non-work-related emails "far exceeded a de minimis use and improperly included political and personal topics." Final Order ¶ 3.7. Additionally, the Board concluded that Dr. Hagopian's forwarding of the strike email promoted the interests of, supported, and solicited on behalf of the striking organization. *Id.* Dr. Hagopian's misuse of her state-issued email was continuing in nature, as opposed to a one-off or unintentional violation. *See* Wash. Admin. Code § 292-120-030(2)(a). Dr. Hagopian does not meaningfully dispute that the Board found that she violated the Ethics in Public Service Act, only that she disagrees with their prosecutorial decision making. Dkt. 51 ¶¶ 76–83; *see also* Final Order ¶ 3.2 (finding that material facts were not in dispute and that Dr. Hagopian did not contest the factual allegations that they forwarded the strike email and received numerous emails "not related to their work as a professor."). Dr. Hagopian's violations were, at the very least, "minimal but not de minimis." *See, e.g.*,

_____

[3] The second *Bajakajian* factor—whether the underlying offense relates to other illegal activities—is "often ill-suited to the civil context," and so is neutral here. *See Pimentel II*, 115 F.4th at 1068 (analyzing constitutionality of $63 late fee imposed on a $63 parking ticket under the Excessive Fines Clause).

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE                    19                    ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

*Pimentel I*, 974 F.3d at 923 (holding that the nature and extent of plaintiffs' violations of city parking codes was "minimal but not de minimis" in upholding $63 parking ticket fee).

*Second*, the Board could have imposed different penalties. The Board could have imposed a penalty of up to $5,000 per violation. *See* Wash. Rev. Code § 42.52.480(1)(b). Given the fact that there were hundreds of violative emails sent to or from Dr. Hagopian's state-issued email address, a $750 penalty was sufficient, but not excessive, to address her violations of the law. *See, e.g.*, *Vasudeva v. United States*, 214 F.3d 1155, 1162 (9th Cir. 2000) (holding that civil monetary penalty was not an excessive fine for food stamp fraud, considering that alternative punishment provided by statute was permanent disqualification).

*Finally*, the underlying conduct for which Dr. Hagopian was sanctioned—use of state resources for personal benefit—causes significant harm to the State. *Pimentel I*, 974 F.3d at 923 (courts may consider how the violation erodes the government's purpose in proscribing the conduct, and are not limited to monetary harm resulting to the government); *see also Towers v. City of Chicago*, 173 F.3d 619, 625 (7th Cir. 1999) (court may consider harms that are "not readily quantifiable," but that are "certainly real and a legitimate subject" of the government's concern). As the Washington Legislature has found, "[e]thics in government are the foundation on which the structure of government rests. State officials and employees of government hold a public trust that obligates them, in a special way, to honesty and integrity in fulfilling the responsibilities to which they are elected and appointed." Wash. Rev. Code § 42.52.900. As part of that public trust and special responsibility, state employees may not use their state employment "for personal gain or private advantage." *Id.* By misusing her state-issued email, Dr. Hagopian damaged the public's trust in and respect for state employees. *See Knudsen*, 235 P.3d at 840 ("The citizens of the state expect all state officials and employees to perform their public responsibilities in accordance with the highest ethical and moral standards and to conduct the business of the state only in a manner that advances the public's interest.") (quoting Wash. Rev. Code § 42.52.900). Because Defendants can make out a "commonsense

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

explanation" supporting the Board's fine, *Pimentel II*, 115 F.4th at 1069, Dr. Hagopian fails to state an as-applied Eighth Amendment Excessive Fines Clause claim.

Dr. Hagopian's facial Excessive Fines claim necessarily fails too. Dr. Hagopian focuses on the maximum penalties available under Wash. Admin. Code § 292-120-020(3), Dkt. No. 51 ¶ 126, but that is the wrong inquiry for a facial challenge. *Diamond Sands Apartments, LLC v. Clark County*, 164 F.4th 759, 765 (9th Cir. 2026) (explaining, with respect to a facial challenge under the Excessive Fines Clause, that a plaintiff "must demonstrate that [a law] is unconstitutional in *every* conceivable application.") (quoting another source). Given the broad scope of the Ethics in Public Service Act, there are undoubtedly situations where the maximum sanctions provided by the Act may be appropriate. *Id.* at 765 (a plaintiff may not rely on "a worst-case analysis that may never occur to demonstrate facial unconstitutionality") (cleaned up). In any event, because Dr. Hagopian's as-applied challenge fails, so too does her facial challenge. *Fox*, 492 U.S. at 484–85.

The Court should dismiss Claim VI with prejudice.

**5.    Count VII: The Court should decline to exercise supplemental jurisdiction over Plaintiff Hagopian's state law claims**

Dr. Hagopian requests the court exercise its supplemental jurisdiction to review and "set aside" the Board's order sanctioning her under the WAPA. Dkt. No. 51 ¶¶ 7, 129(a)–(f). The Court should decline to do so here and dismiss this claim without prejudice.

A federal court may decline to exercise supplemental jurisdiction over a state law claim that is part of the "same case or controversy" as claims within the court's original jurisdiction. 28 U.S.C. § 1367(a), (c). This includes when a claim raises a complex issue of state law, or when the court has dismissed all claims over which it has original jurisdiction. *Id.* § (c)(1), (3); *see, e.g.*, *Kenmore MHP LLC v. City of Kenmore*, No. 19-6014-RJB, 2019 WL 6769369, at *4–5 (W.D. Wash. Dec. 12, 2019) (declining to exercise supplemental jurisdiction over WAPA claim brought by city against the Washington Growth Management Hearings Board). In

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

exercising its discretion, courts should be guided by the values of "economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

The Court should decline to exercise supplemental jurisdiction over Dr. Hagopian's WAPA claim for three reasons.

First, Dr. Hagopian's request for judicial review raises complex issues of state law. 28 U.S.C. § 1367(c)(1). She alleges that the Board erred in failing to follow procedures required by state law, lacks authority under state law to sanction violations, and erroneously interpreted state law. Dkt. No. 51 ¶ 129(a)–(f). A state court should have the opportunity to review these important issues of state law in the first instance. *See, e.g.*, *O'Connor v. Nevada*, 27 F.3d 357, 363 (9th Cir. 1994) (affirming district court's decision to decline to exercise supplemental jurisdiction over "difficult questions" of state constitutional law); *see also Harrington v. Spokane County*, 114 P.3d 1233, 1238 (2005) (courts require the exhaustion of administrative remedies for an "as applied" constitutional challenge in order to allow the agency to develop the facts necessary to adjudicate the constitutional claim).

Second, if the Court grants the rest of Defendants' motion, all that will remain is Dr. Hagopian's request for judicial review under WAPA. 28 U.S.C. § 1367(c)(3). "Once it appears that a state claim constitutes the real body of a case . . . the state claim may fairly be dismissed." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966).

Third, interests of economy and convenience are best served by this Court declining to exercise supplemental jurisdiction. Although this case has been pending for over a year, it has been stayed or on appeal almost the whole time. The case has not proceeded past the initial pleadings, and no discovery has been taken. Moreover, no efforts have been made by either side in litigating Dr. Hagopian's WAPA claim, which was brought separately before being consolidated. The Court's resources will also be preserved if it is not called on to resolve state issues.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT -- NO. 2:23-cv-01581-KKE

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Accordingly, the Court should decline to exercise supplemental jurisdiction over Dr. Hagopian's WAPA claim and dismiss it without prejudice so that it can be refiled in state court.

**C.      The Court Should Dismiss with Prejudice, Except as to Dr. Hagopian's WAPA Claim, and Award the State Attorney Fees**

Finally, the Court should dismiss Plaintiffs' Complaint—except for Dr. Hagopian's WAPA claim—with prejudice and without leave to amend and should award the State its reasonable fees and costs in bringing this motion.

Although leave to amend should ordinarily be given freely, *see* Fed. R. Civ. P. 15(a), a district court may dismiss without leave to amend where amendment would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Amendment is futile if the pleading "could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Any further amendment here would be futile. Defendants have notified Plaintiffs of their belief that the Complaints in this matter failed to state a claim as a matter of law *four times*. *See* Dkt. No. 12 at 18–21 (original motion to dismiss); Dkt. No. 19 at 20–23 (renewed motion to dismiss); Dkt No. 25 at 8–12 (reply in support of renewed motion to dismiss); Dkt. No. 44 (motion to dismiss Second Amended Complaint); Dkt. No. 49 (reply in support of motion to dismiss Second Amended Complaint); *Flaxman v. Ferguson*, Case No. 24-919, DktEntry 16.1 at 40–55 (9th Cir. May 31, 2024) (State Defendants' answering brief). Despite being on notice of Defendants' position at multiple junctures, and having now filed four Complaints in this matter, plus the original complaint in the *Hagopian* standalone matter, Plaintiffs have never amended their Complaint to address these concerns. That Plaintiffs have not done so suggests that they cannot do so. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010) (concluding that, because a plaintiff could not make a prima facie case under binding law, amendment would be

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

futile). As the Court already recognized, this should be Plaintiffs' "final opportunity" to plead their claims. Dkt. No. 50 at 8.

For similar reasons, the Court should award the State attorneys' fees. 42 U.S.C. § 1988(b) authorizes the Court to award the prevailing party in an action brought pursuant to § 1983 its reasonable attorneys' fees and costs where the action is "unreasonable, frivolous, meritless, or vexatious." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994). An action is frivolous when the result is obvious or the plaintiff's claims are wholly without merit. *Id.* After Defendants filed their Motions to Dismiss in this Court and their answering brief in the Ninth Circuit, identifying several fundamental deficiencies in the merits of Plaintiffs' case, Plaintiffs could have reasonably chosen to withdraw their Complaint or voluntarily amend the Complaint to address these deficiencies. Plaintiffs did none of those things, forcing Defendants to respond to yet another deficient Complaint. The State respectfully requests its reasonable attorneys' fees and costs in bringing this motion.

### IV.   CONCLUSION

The Court should grant Defendants' motion, dismiss all claims (except for Dr. Hagopian's WAPA claim) with prejudice, and award Defendants their reasonable fees and costs in bringing this motion.

DATED this 27th day of July 2026.

NICHOLAS W. BROWN
Attorney General

*/s/ Sarah E. Smith-Levy*
SARAH E. SMITH-LEVY, WSBA No. 55770
ANDREW HUGHES, WSBA No. 49515
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Sarah.E.Smith-Levy@atg.wa.gov
Andrew.Hughes@atg.wa.gov
*Attorneys for Defendants Nicholas W. Brown and Kate Reynolds*

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

I certify that this document contains 8,386 words, in accordance with LCR 7(e)(4).

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT -- NO. 2:23-cv-01581-KKE

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744